BADGER LUMBER COMPANY, APPELLEE, V. WILLMER MAYES AND NEW HAMPSHIRE FIRE INSURANCE COMPANY, APPELLANTS, ET AL., APPELLEES.

FILED JANUARY 4, 1894.   NO. 5056.

1. **Bill of Exceptions:** REVIEW. Where, upon an inspection of the bill of exceptions, palpable omissions appear, and the bill is so illegible and so unsystematically arranged that an intelligent examination is impracticable, the supreme court will upon review assume that there was evidence sufficient to sustain the findings of the trial court upon questions of fact.

2. **Mechanics' Liens.** Where one supplies lumber to a contractor for the erection of a building upon land of a third person with

the understanding between the vendor and vendee that it shall be used in the construction of such building, and delivers it to the vendee at a place other than the premises where the building is constructed, and the vendee there manufactures such material into another form and so uses it in constructing such building, the vendor is in such case entitled to a mechanic's lien upon the premises.

3. Time Lien Attaches. As to whether a lien so acquired could antedate the actual delivery of the manufactured articles upon the premises where the building is constructed, *quære.*

APPEAL from the district court of Lancaster county. Heard below before HALL, J.

*Lamb, Ricketts & Wilson,* for appellants Mayes Bros.:

Persons who furnish lumber and materials to manufacturers, to be made up into articles used in the construction of buildings, cannot obtain liens against the buildings in which such articles are used. (*Great Western Mfg. Co. v. Hunter,* 15 Neb., 32; *Pitts v. Bomar,* 33 Ga., 96; *Foster v. Dohle,* 17 Neb., 631.)

*Harwood, Ames & Kelly,* for appellant New Hampshire Fire Insurance Company:

The materials mentioned in the second cause of action are not the proper subject of a lien. (*Horton v. Carlisle,* 2 Disney [O.], 184; *Arnold. v. Budlong,* 11 R. I., 561; *Bennett v. Shackford,* 11. Allen [Mass.], 444; *Choteau v. Thompson,* 2 O. St., 114.)

*Charles E. Magoon,* for appellee Badger Lumber Company:

A lien may sometimes be established for work done away from the premises if it is done upon articles which are intended for use in the building and are actually used in its construction. (2 Jones, Liens, sec. 1324; *Hinchman v. Graham,* 2 S. & R. [Pa.], 170; *Wilson v. Sleeper,* 131 Mass., 177; *Dewing v. Congregational Society of the North Par-*

*ish of Wilbraham,* 13 Gray [Mass.], 414; *Sweet v. James,* 2 R. I., 270; *Singerly v. Doerr,* 62 Pa. St., 9; *Bennett v. Schackford,* 11 Allen [Mass.], 444.)

Lumber furnished for a building with the understanding that it is to be used in the erection of the building may be delivered at a carpenter's shop at a distance from it, and a lien will attach to the premises for the price of it, although it is never actually used in the building. (2 Jones, Liens, sec. 1329; *White v. Miller,* 18 Pa. St., 52; *Singerly v. Doerr,* 62 Pa. St., 9; *Presbyterian Church v. Allison,* 10 Pa. St., 413; *Odd Fellows' Hall v. Masser,* 24 Pa. St., 507; *Hinchman v. Graham,* 2 S. & R. [Pa.], 170; *Harker v. Conrad,* 12 S. & R. [Pa.], 301; *Wallace v. Melchoir,* 2 Browne [Pa.], 104.)

*Abbott, Selleck & Lane* and *M. L. Easterday,* for other appellees.

Irvine, C.

This was an action brought by the Badger Lumber Company against Willmer Mayes, George D. Mayes, and a number of other defendants for the purpose of foreclosing a mechanic's lien upon a lot in the city of Lincoln. The petition states two causes of action. The first alleges the sale and delivery by plaintiff to the two Mayeses between November 16, 1888, and December 13, 1888, of material for the construction of a building upon the premises. The second cause of action alleges the sale and delivery between August 10 and November 15, 1888, of lumber and building material to one D. R. McCurdy for the construction of the same building; this count alleging that the Mayeses were the owners of the land, and that Mc-Curdy was a contractor with them for the inside finish of the building, for which it was alleged that the lumber was furnished. The New Hampshire Fire Insurance Company, by answer, sets up a mortgage upon the premises,

executed by the Mayeses September 11, 1888, and recorded October 2, 1888 ; and Henry E. Lewis, by answer, sets up another mortgage dated and recorded upon the same days.   One Korsmeyer and one Noll seem also to have set up mechanics' liens upon the premises, although their pleadings do not appear in the transcript.   L. B. Treman and F. A. Cropsey seem also to have set up mortgages upon the premises, but their pleadings do not appear in the transcript.   The decree established the lien of the plaintiff upon its second cause of action, and the lien of Korsmeyer, as mechanics' liens of equal priority and senior to all others.   It establishes the liens of the New Hampshire Fire Insurance Company and Lewis, under their mortgages, as of equal priority, and next junior to the mechanics' liens of plaintiff and Korsmeyer; the lien of the plaintiff upon its first cause of action, and that of Noll, as mechanics' liens of equal priority and next in order; and the liens of Treman and Cropsey as junior to the others; and ordered foreclosure accordingly.   The Mayeses appeal, and the New Hampshire Fire Insurance Company also asks that the decree be modified in so far as it establishes a lien on behalf of the plaintiff, superior to that of its mortgage.

It appears by inference from the pleadings, and seems to be conceded in the briefs, that such material as was furnished by the plaintiff to McCurdy, and which forms the basis of the second cause of action alleged by plaintiff, consisted of lumber delivered not at the premises, but at the planing mill of McCurdy, where it is claimed it was worked up into finishing material for the building.   Mayes Brothers, in support of their pleadings, urge first, that the claim or lien of plaintiff upon its second cause of action was not filed within time, and this because the evidence fails to show any delivery of material within sixty days of the filing ; it being claimed that the single item of the account bringing the furnishing within that time is unsupported by the

evidence.    It is next claimed that the law does not provide
for any lien for materials furnished at a place other than
where the building is constructed, or for the purpose of be-
ing worked over into other articles in which the original
material is not distinguishable; and, finally, that there was
failure of proof as to the amount and value of the lumber
bought by McCurdy and actually used by him in the con-
struction of this building.    We think only the second of
these points is properly presented to us for review.    The
bill of exceptions is in such a condition that it is exceed-
ingly difficult, if not absolutely impossible, to ascertain
just what the evidence was, and give it its due force; and
we frankly state that after a conscientious and laborious
effort to study the case upon this bill, that effort was
abandoned as fruitless.    The bill opens with an intelligible
and intelligent stipulation as to certain material facts, and
thereupon follows a record of certain objections and rulings
upon questions and answers appearing in depositions at the
end of the record; then follows the testimony of certain
witnesses, which, from certain objections made, seems to be
testimony in rebuttal.    Next comes a group of original
instruments offered in evidence, with no intelligible marks
of identification.    Then follows a great mass of testimony,
type written, in all parts trying to the eyes, for the most
part appearing to be a "carbon copy," in some parts il-
legible, and, in one place at least, showing that a portion
has been omitted.    Under the rule established in *Dawson
v. Williams*, 37 Neb., 1, this palpable omission will be in
itself sufficient reason for not considering any exceptions
based upon the insufficiency of the evidence.    But we
think, in addition to this, that some consideration is due to
the court, and that appellants should at least be required to
present to this court a record written in a legible manner
and arranged in such a way that the court may ascertain
upon whose part the different portions of the evidence
were offered, if not the order in which they were received,

and also without the difficulty of solving an enigma determine what evidence was before the trial court, and what excluded. If the appellants fail to do this, this court should presume, in matters not clearly appearing, that there was evidence justifying the trial court in its findings. We shall, therefore, presume, for the reasons just stated, that there was evidence before the trial court justifying its findings upon the controverted issues. It does appear from the pleadings, and is admitted in the briefs, that the material furnished by plaintiff, which forms the basis of its second cause of action, was not delivered where the building was erected, but at the planing mill of McCurdy, and we are by this brought to a consideration of the contention that no lien can be claimed on account of such delivery.

In *Great Western Mfg. Co. v. Hunter*, 15 Neb., 32, the court, speaking through COBB, J., said: " I have no doubt that under the provisions of our statute then in force, lumber or other building material, sold on general book account without regard to any particular building, if used by the purchaser in the erection or reparation of a building upon land of which he is the owner, the vendor of such lumber or other building material may have his lien." And in *Foster v. Dohle*, 17 Neb., 631, it was said by MAXWELL, J. : " This liability of the owner of a building which is being erected or repaired is not placed on the ground of a contract made with the owner by the person performing the labor or furnishing the material; because usually there is no such contract between them, and when there is, the right of the party to a lien is unquestioned; but upon the ground that as the labor or material contributed to the erection or reparation of the building of which the owner receives the benefit, the law imposes upon him the responsibility, for sixty days at least, of seeing that the claims are paid. * * * So far as it may be necessary to carry this purpose into effect, the law should be liberally construed." In *Marrener v. Paxton*, 17 Neb., 634, it is

said: "We have no doubt that in a proper case one furnishing materials in good faith for the erection of a building under an agreement with a contractor for that purpose, may file a mechanic's lien upon the structure and the lots on which it stands. The lien is given, however, not upon the ground that a contract was made by the owner with such subcontractor, but because the material so furnished was used in the erection of the building." In *Irish v. Pheby*, 28 Neb., 231, the court, commenting upon *Foster v. Dohle, supra*, say that the doctrine is "that the builder would be liable for such material as was actually put into the building, and might be held liable for material not actually put into the building if those furnishing it to the contractor acted in entire good faith, and the material was delivered to the material-man at the site of the building."

In a number of cases the court has stated that the mechanic's lien law of this state should receive a liberal, and not a strict, construction; and the foregoing authorities, taking the portions cited along with the questions there under consideration, lead to the conclusion that the doctrine of a subcontractor's lien is not based upon any implied agency authorizing the contractor to obligate the owner, but upon an equity raised by the statute from the use of materials in the construction of a building on behalf of the person furnishing such material. In some cases it is not required that the subcontractor should show, at least to make out a *prima facie* case, that the materials were actually used in the construction, delivery upon the premises being deemed *prima facie* evidence, and held to be notice to the owner of the furnishing of the material for that purpose. But in view of the policy of our law upon the subject, we see no reason why one furnishing lumber at a planing mill, to be there worked into shape to put into a building, where it was intended by the vendor and purchaser that it should be so used, and where it has been in fact so used, should not be entitled to a lien as much as if

he had furnished it·upon the premises, and had it there worked into proper form, the only difference arising upon the question of notice, which will be hereafter referred to.

We think the law is well stated in 2 Jones, Liens, sec. 1324, as follows: "A lien may sometimes be established for work done away from the premises if it be done upon articles which are intended for use in the building, and are actually used in its construction or repair. In such case the labor is to all intents and purposes performed in the erection, alteration, or repair of a building within the terms of the statute. Where, for instance, the inside finish for a house is sawed, planed, or moulded at a a mill, or the doors or windows are made at a carpenter shop, or the iron work is prepared at a blacksmith shop away from the premises, but really as a part of the work of construction, and the material upon which such work is done actually becomes a part of the building, a lien arises for such labor equally with the labor performed upon the land on which the house is erected. But it is essential that such labor be performed under an agreement that the articles upon which the work is done are to be used in the construction of the building against which it is sought to enforce the lien. Thus, if the owner of a planing mill saws lumber for a builder without any agreement for its use in any particular building, though the lumber is in fact used in the construction·of a building which the builder was erecting at the time under a contract for another person, the mill-owner is not entitled to a lien on such building." This reasoning applies to subcontractors as well as principal contractors. While the authorities are not in harmony in different states upon many questions arising under mechanic's lien laws, this doctrine seems to receive substantial and reasonable support from the adjudications. Assuming, therefore, that the evidence justified the trial court in finding that the complainant furnished this lumber to McCurdy with the understanding that it should be

used in the construction of this building, and that it was in fact so used, we think the lien was correctly allowed.

There remains only the question of priorities. It is probable that in such a case, in a contest between a lienor and mortgagee, the time when the material in its manufactured form was delivered upon the premises should be considered the time when the lien attached. So if in this case the evidence showed that the mortgage of the New Hampshire Fire Insurance Company was executed before any delivery of the manufactured material upon the premises, it would appear unjust to give the plaintiff priority of lien, although lumber may have been delivered for the purpose of manufacturing at the planing mill before the mortgage was made. The notice to subsequent lienors is derived from the condition of the premises (*Henry & Coatsworth Co. v. Fisherdick*, 37 Neb., 207; *Holmes v. Hutchins*, 38 Neb., 601), and it would seem too much to require of a mortgagee that he should not only take notice of what was actually going on upon the premises, but should also investigate as to whether or not materials had been purchased for an improvement and had been delivered elsewhere. But in this case the presumption is that the evidence showed delivery upon the premises before the mortgages were made, and we can find no evidence to the contrary. The judgment of the district court is

AFFIRMED.