GRAND ISLAND BANKING COMPANY, APPELLEE, V. GUS-
TAVE KOEHLER, APPELLEE, AND CHARLES T. DURKEE
ET AL., APPELLANTS.

FILED FEBRUARY 9, 1899.   No. 8629.

1. **Mechanics' Liens:** CHARACTER OF MATERIALS. Section 1, chapter 54, Compiled Statutes, gives a right of lien in two classes of cases, one of which is for material furnished, but this does not necessarily imply raw material in the condition in which it is actually furnished or delivered.

2. ———; ACCOUNT. A running account, or an account made up of

items which may be tacked to constitute a single account, must be considered and classified by referring, among other considerations, to the intention of the parties as manifested by their contemporaneous conduct with reference to the transactions involved, and thus tested, the rights of a litigant herein are determined.

3. ———: PRIORITY OF MORTGAGE. A mortgage filed during the erection of a building on the premises mortgaged has priority over the rights of a person who subsequently began to furnish material for such erection.

APPEAL from the district court of Hall county. Heard below before THOMPSON, J. *Reversed.*

*Charles G. Ryan,* for appellants.

References: *Holmes v. Hutchins,* 38 Neb. 601; Phillips, Mechanics' Liens 386; 2 Jones, Mechanics' Liens 1389; *Simpson v. Murray,* 2 Pa. St. 76; *White Lake Lumber Co. v. Russell,* 22 Neb. 129; *Chappell v. Smith,* 40 Neb. 579; *Badger Lumber Co. v. Mayes,* 38 Neb. 830; *Henry & Coatsworth Co. v. Fisherdick,* 37 Neb. 207; *Congdon v. Kendall,* 53 Neb. 282; *Hoagland v. Lowe,* 39 Neb. 397; *Bohn Mfg. Co. v. Kountze,* 30 Neb. 719; *Buchanan v. Selden,* 43 Neb.. 559; *Weir v. Thomas,* 44 Neb. 507; *Great Western Mfg. Co. v. Hunter,* 15 Neb. 37; *Swift v. Thompson,* 9 Conn. 63; *Allen v. Mooney,* 130 Mass. 155; *Carpenter v. Walker,* 140 Mass. 416; *First Nat. Bank v. Elmore,* 52 Ia. 541; *Tifft v. Horton,* 53 N. Y. 377; Phillips, Mechanics' Liens sec. 174 *et seq.; Ballou v. Black,* 17 Neb. 389; *Central Loan & Trust Co. v. O'Sullivan,* 44 Neb. 834; *Hansen v. Kinney,* 46 Neb. 208.

*Abbott & Caldwell,* for appellant Durkee.

References: *Great Western Mfg. Co. v. Hunter,* 15 Neb. 37; *Dewing v. Congregational Society,* 13 Gray [Mass.] 414; *Howes v. Reliance Wire Works Company,* 46 Minn. 44; *Sweet v. James,* 2 R. I. 270; *Jones v. Keen,* 115 Mass. 170; *Wilson v. Sleeper,* 131 Mass. 177; *Badger Lumber Co. v. Mayes,* 38 Neb. 822; *Chapman v. Brewer,* 43 Neb. 890; *Noll v. Kenneally,* 37 Neb. 879.

*Frick & Dolezal,* for appellant Fremont Manufacturing Company.

*R. C. Glanville*, for appellees.

References: Anderson's Law Dictionary 16; *Frankoviz v. Smith*, 34 Minn. 403; *Lamb v. Hanneman*, 40 Ia. 41; *Skyrme v. Occidental Mill & Mining Co.*, 8 Nev. 236; *Schmeiding v. Ewing*, 57 Mo. 78; *O'Leary v. Burns*, 53 Miss. 171; *Pacific Mutual Life Ins. Co. v. Fisher*, 106 Cal. 224; *Choteau v. Thompson*, 2 O. St. 424.

*W. H. Thompson*, for appellee George A. Hoagland and others.

Ryan, C.

This action was brought in the district court of Hall county for the foreclosure of a mortgage held by the Grand Island Banking Company, and it obtained a decree, of which neither it, nor any other party, complains. This mortgage was upon certain real property in Grand Island, on which the proprietor had succeeded in erecting a hotel, but had not succeeded in paying the mechanics' liens and mortgage indebtedness thereby rendered unavoidable. It is not essential, and would be simply confusing, to describe many of these, for no one asks to have them placed in a class senior or junior to that in which they were placed by the district court. The appellants are Charles T. Durkee and the Fremont Manufacturing Company, whose appeals present the same question, and Samuel A. Peterson and George A. Packer, who, as joint mortgagees, hold but a single interest litigated. The appellee whose priority is challenged is the Chicago Gas & Electric Fixture Manufacturing Company. This appellee was placed in the first class, Peterson and Packer were alone placed in the second class, and Durkee and the Fremont Manufacturing Company were placed in the third class, and in this order the respective priorities of these parties were established by the decree appealed from. The mortgage to Peterson and Packer was made while the hotel was in course of erection, and was

filed for record April 28, 1893. The rule enforced in *Henry & Coatsworth Co. v. Fisherdick*, 37 Neb. 207, for determining priorities as between claimants under the mechanics' lien law and the holders of mortgages made while the building was in course of erection is accepted by all parties; but it is claimed by Durkee and the Fremont Manufacturing Company that there are circumstances which entitle them to a better standing than that rule would give them. As the contention of these two parties and the facts upon which that contention is based are practically the same, we shall let the facts in one case represent both, and so describe them.

Charles T. Durkee alleged that on October 10, 1892, he entered into a written contract with Gustave Koehler, the proprietor of the hotel building in course of erection, by the terms of which contract Durkee undertook to furnish the tin-roofing, steel ceilings, copper and iron cornices, bay-window trimmings, copper finials, crestings, galvanized iron cornices, gutters, and conductors that should be necessary in and about the construction and completion of the hotel building, for all of which he was to receive $2,435. There were extras furnished, but the balance, because of payments found by the court, was $1,002.14. The debit items of the account attached to the claim filed for a mechanic's lien were as follows:

"1893.　Aug. 25.
To work, labor, and material on building, as
　per original contract ................... $2,435 00
To extra iron ceiling in office saloon, reading
　room, and lunch room, agreed value....... 400 00
To extra copper work..................... 30 00
To extra tinning and work................. 60 00
To metal tile extra...................... 26 00
　　　　　　　　　　　　　　　　　　　　　　　———————
　　　　　　　　　　　　　　　　　　　　　$2,951 00"

On the face of the above statement it would seem unquestionably true that the mortgage to Peterson and Packer should have precedence over the lien of Durkee.

He, however, insists that he began the manufacture of the copper cornices, finials, etc., in February, 1893; that these were suitable for no other building than that hotel for which they had been designed; that it was necessary thus early to commence the manufacture of them that they might be ready when needed, and that, therefore, the priority of Durkee as' for labor done should date from the commencement of the work in February.

In *Badger Lumber Co. v. Mayes,* 38 Neb. 822, there was used, with reference to facts resembling those under consideration, the following language: "It is probable that * * * in a contest between a lienor and mortgagee the time when the material in its manufactured form was delivered upon the premises should be considered the time when the lien attached. So if, in this case, the evidence showed that the mortgage of the New Hampshire Fire Insurance Company was executed before any delivery of the manufactured material upon the premises, it would appear unjust to give the plaintiff priority of lien, although lumber may have been delivered for the purpose of manufacturing at the planing mill before the mortgage was made. The notice to subsequent lienors is derived from the condition of the premises (*Henry & Coatsworth Co. v. Fisherdick,* 37 Neb. 207; *Holmes v. Hutchins,* 38 Neb. 601); and it would seem too much to require of a mortgagee that he should not only take notice of what was actually going on upon the premises, but should also investigate as to whether or not materials had been purchased for an improvement and had been delivered elsewhere." Counsel for Durkee insist, however, that the above quoted language was with reference to the delivery of raw material at a planing mill for manufacture into blinds, doors, etc., whereas Durkee's claim was for work for the building on the raw material, and, therefore, that the lien commenced from the commencement of this work. But what is raw material? Is it the copper ore upon which Durkee's employés expended their skill; and if so, why? Before this ore reached Fremont

it had been mined and freed from impurities, and it had been transported hundreds of miles. Strictly speaking, it ceased to be raw material when it was removed from its bed. Every manipulation it thenceforward underwent tended to increase its value. If Durkee can avoid the effect of the rule in *Badger Lumber Co. v. Mayes, supra,* as he seeks to, why could not the lien be still further antedated by referring its origin to the time when the ore was first mined? Under section 1, chapter 54, Compiled Statutes, liens are given to any person who shall perform any labor or furnish any material, etc. If the word "labor" is to be held to embrace all the value of the material furnished except such as is strictly raw material, then the word "material," as applied to lumber, must be restricted to trees standing in the forest, ore in the mines, etc. But in the very nature of things the latter in that condition could not be furnished in Nebraska. It is very clear that the statute has left no room for this difficulty, for it gives a lien in two classes of cases: one where labor has been done, the other where material, not necessarily raw material, has been furnished. When Durkee filed his claim for a lien, he recognized this distinction, and very properly claimed simply for the manufactured material furnished by delivering it on the premises. Neither he nor the Fremont Manufacturing Company can be advanced from the class in which they were placed by the district court.

The Grand Island Plumbing Company, having complied with the provisions of the statute with reference to filing its claim for a lien, assigned that claim to the Chicago Gas & Electric Supply Company, the appellee hereinbefore specially referred to. The first item supplied in this account was the furnishing and putting in of some galvanized pipe, a globe valve, a nipple, and a coupling. These, it was testified, were necessary to connect with the city water main, and it was further testified that when completed this was paid for. The date of this item was April 15, 1893. The next item in the

account attached to the claim filed for a lien was for sheet lead, and it was of date May 2, 1893. The mortgage to Peterson and Packer, as already noted, was filed for record April 28, 1893, so that this mortgage, under the rule already invoked, would seem entitled to preference. But it is said the sheet lead had been ordered before April 28, 1893. This could make no difference, for, as we have already seen, the date of the furnishing must govern. In this case the sheet lead had to be ordered from Chicago, and because of the delay incident to lodging the order and transmitting the material, it reached Grand Island after the mortgage to Peterson and Packer had been filed. It was, nevertheless, not furnished until subsequent to the filing of this mortgage, and therefore is not available against it. The next item is in August, and from thenceforward the items run into November. The district court evidently regarded this as a running account from the date of the item amounting to $29.15. Whether or not an account is a running account, or, as counsel for the gas and electric company insist, the items should be tacked, is largely governed by the intention of the parties as evidenced by their conduct. In this case the first item was separately ordered and paid for. It is clear the parties did not by this transaction intend to open a continuous account. The sheet lead was for use under pillars, and had no reference to the material described in the first item; therefore, could neither vary, control, nor extend it. The account, therefore, should only be deemed to have originated, at best, on May 2, 1893, and hence this claim should be placed in the third class,—otherwise the classification of the district court, we think, was correct.

There was a contention as to whether certain saloon fixtures were personal or real property. We are not at all confident that we could add to public general knowledge any new or valuable information by describing the appearance or functions of what seem to be the ordinary equipments of a saloon. We shall therefore refrain from

the attempt. On the evidence submitted it was found that these were parts of the real property, and we are satisfied to accept the judgment of the district court in respect thereto. On the appeal of Peterson and Packer against the lien of the Chicago Gas & Electric Supply Company the judgment of the district court is reversed, and the cause is remanded with instructions to the district court to enter a decree conformable with the views above expressed.

REVERSED AND REMANDED.

HARRISON, C. J., not sitting.