[Sac. No. 1003.  Department Two.—December 22, 1903.]

F. M. SWASEY, Respondent, v. COUNTY OF SHASTA et al., Appellants.

COUNTY GOVERNMENT ACT—"BUILDINGS" BY COUNTY—"FENCE"—DUTY TO ADVERTISE FOR BIDS—PROHIBITION.—Under the provisions of the County Government Act; requiring that all necessary "buildings must be erected by contract let to the lowest responsible bidder," after a required notice by publication, the term "buildings" is intended to include the erection of an iron "fence" around the grounds upon which the courthouse of the county is situated.  It is the duty of the supervisors of the county to advertise for bids, and let the erection of such fence to the lowest bidder; and prohibition will lie to prevent the enforcement of a contract for its erection to a bidder without such advertisement and letting.

APPEAL from a judgment of the Superior Court of Shasta County.  Edward Sweeney, Judge.

The facts are stated in the opinion of the court.

Tirey L. Ford, Attorney-General, U. S. Webb, Thomas B. Dozier, Francis Carr, and Reid, Dozier & Carr, for Appellants.

Braynard & Perry, for Respondent.

McFARLAND, J.—This is an appeal by defendants from the judgment of the court below in a prohibition proceeding therein instituted, prohibiting and restraining the super-

visors of Shasta County from executing a certain proposed
contract with persons known as Parcells-Greenwood Com-
pany, for the construction by the latter of an iron fence
around the grounds upon which the courthouse of said
county is situated, and from taking any further action rela-
tive to said contract. All questions as to the propriety of the
remedy by prohibition and as to necessary parties defendant
having been waived, we will not discuss those questions.

The board of supervisors desiring to have an iron fence
constructed around the courthouse grounds, on March 12,
1902, the Parcells-Greenwood Company presented to them
plans and specifications of such fence and offered to con-
struct it for $1,735; and at the same time one Masterson also
presented to them plans and specifications for the same pur-
pose, and offered to build the fence for $1,487.85.  On the
same day the board ordered that the contract be awarded to
the Parcells-Greenwood Company for the sum stated by them
upon their execution of a contract in accordance with their
plans and offer, to be approved by the district attorney and
signed by the chairman of the board, etc.  But prior to that
time the board had not advertised for plans or specifications
for said fence, and had not adopted any plans or specifica-
tions, and had not given any notice that the contract for con-
struction of the same would be let to the lowest responsible
bidder; and for these reasons the court below held the con-
tract void and prohibited any further action toward execut-
ing and enforcing it.  The question to be determined—as will
hereafter be seen—is whether the word "building" as used
in the County Government Act, includes the "fence" de-
scribed in the petition for the writ of prohibition.

Subdivision 8 of section 25 of the County Government Act
(Stats. 1897, p. 459) provides that the board of supervisors
shall have power "under such limitations and restrictions as
may be provided by law," to provide a courthouse, jail, and
hospital, "and such other public buildings as may be neces-
sary," etc., and it is further provided that none of such
buildings shall be constructed until plans and specifications
shall have been made therefor and adopted by the board, and
that "all such buildings must be erected by contract let to
the lowest responsible bidder, after notice by publication in

a newspaper of general circulation published in the county for at least thirty days.'' If these provisions include the fence in question here, then the proposed contract was unauthorized, and the judgment of the court below prohibiting its execution is right. It will be observed that this case does not raise the question whether a municipality, having accepted, used, and retained the services or the property of another, can repudiate payment on the ground that the contract therefor was not regularly made; here the purpose is to prohibit the making of the contract before any action under it.

There is no well-established legal definition of the word ''building'' which absolutely, and under all circumstances, either includes or excludes a ''fence.'' The question greatly depends upon the connection in which the word ''building'' is used, and the evident purpose of the statute or contract in which it is found. In Bouvier's Law Dictionary (Rawle's edition, vol. 1, p. 269) ''building'' is defined as follows: ''An edifice erected by art, and fixed upon or over the soil, composed of stone, brick, marble, wood, or other proper substance, connected together, and designed for use in the position in which it is so fixed.'' This is about as good a general definition of the word as can be found in the books, and it undoubtedly includes in terms an ordinary fence. The same definition is given in the Century Dictionary, with this addition: ''Thus a pole fixed in the earth is not a building, but a fence is.'' But without taking these definitions as unconditionally correct, we must, as before stated, look somewhat to the context and subject-matter of the instrument to be construed . Thus in *Wright* v. *Evans*, 2 Abb. Pr. N. S. 308, it was held that a covenant not to erect a *building* within a certain distance of a boundary-line was broken by the erection within the prescribed distance of a fence twenty feet high—the purpose of the covenant evidently being to prevent obstruction of light and air; while in *Nowell* v. *Boston Academy*, 130 Mass. 209, it was held that the erection of a fence six feet high was not a building within a similar covenant. These cases illustrate the view above expressed. Now, the legislature by the enactment of said section 25 of the County Government Act, in which the word

"building" occurs, evidently intended to provide that the board of supervisors, except in some trivial matters expressly enumerated, shall not have power to purchase public supplies, or to sell public property, or to make contracts for constructive work, otherwise than by advertising proposals to bidders. For instance, subdivision 9 of the section provides that all sales of property no longer required for public use must be by public auction, after notice, unless in the unanimous judgment of the board it is not of greater value than seventy-five dollars; subdivision 4, that all contracts for the construction of bridges, wharves, chutes, etc., exceeding in cost five hundred dollars, must be upon advertisements for bids; subdivision 21, that all ordinary county supplies shall be bought after advertisement for sealed bids; and by subdivision 7 it is provided that real property for the purpose of obtaining water for public use can be purchased only after advertisement of the intention of making such purchase, with the proposed price, etc., and the time when it will be considered. This being the general intent and purpose of the act, and, as we have seen, the word "fence" not being excluded from the definition of the word "building," we think that the case at bar presents an instance where the latter word should be held to include the former. This view makes it unnecessary to determine whether the act of the legislature approved April 1, 1872, (Stats. 1871-1872, p. 925,) entitled "An Act to regulate the erection of public buildings and structures," in which the word "structure" is used, has been impliedly repealed by the County Government Act.

The judgment appealed from is affirmed.

Lorigan, J., and Henshaw, J., concurred.

Hearing in Bank denied.