JOHN A. ROEBLING'S SONS COMPANY, APPELLEE, v. NEBRASKA ELECTRIC COMPANY ET AL.: CHICAGO SAVINGS BANK & TRUST COMPANY ET AL., APPELLANTS.

FILED JUNE 6, 1921. No. 21362.

1. Electricity: ELECTRIC PLANT: APPURTENANCE: MORTGAGE. Where a company, owning independent electric generating and distributing plants in several small towns, connects these plants by a high tension transmission line, with the object of producing economy and efficiency in operation, and of assisting and enlarging the work of the electric plants, *held,* that such transmission line, though extending across the country over property not owned by the company, and over which it had only a license to go, would constitute an appurtenance to the existing plants from which the line was constructed, and be subject to the lien of a mortgage, which had been given before the transmission line had been constructed, and which was to cover the plants and their appurtenances, and which contained a clause covering additions and extensions and properties to be afterwards constructed or acquired.

2. ——: ——: ——. Such transmission line constructed from one of the electric lighting plants becomes an appurtenance and an integral part of such plant from the time construction is commenced, its character in relation to the main property being de-

termined by the purpose for which it is being built, and its character as such appurtenant part of the plant from which it is constructed does not await its completion and operation as a part. thereof.

3. ——: ——: ——: MORTGAGE. Where the mortgage provides. for the payment of further moneys in case improvements and extensions are made, and the mortgagee, after the construction of such a transmission line has begun, advances moneys on the faith and credit of such construction, the acceptance of such moneys. constitutes such an act on the part of the mortgagor as will subject the transmission line to the lien of the mortgage.

4. ——: ——: LIENS: PRIORITY. Where one furnishes material for the construction of such transmission line, after the line has. been partly erected, *held*, on a claim for a mechanic's lien, that his rights are subordinate to the lien of the mortgage.

5. ——: ——: ——. The mere fact that the mortgage money was given with the intention that it should be used in the purchase or in the improvement or extension of the property does not. render the mortgage subordinate to the mechanic's lien, where it does not appear that the mortgagee had retained any control over the use of the funds furnished under the mortgage, and had not ordered or required, and had no power to order or require, that any extensions or improvements should be made.

6. Appeal: TRUSTEE FOR BONDHOLDERS. *Held*, that the trustee for the bondholders under the mortgage was entitled to bring an appeal to this court, where a judgment had been rendered subordinating the lien of the mortgage to that of the mechanic's lien.

APPEAL from the district court for Knox county: ANSON A. WELCH, JUDGE. *Reversed*.

*Fisher, Boyden, Kales & Bell, Albert M. Kales, W. D. Funk* and *William K. Otis*, for appellants.

*Newman, Poppenhusen, Stern & Johnston, Montgomery, Hall & Young, Charles T. Farson* and *Raymond G. Young*, contra.

FLANSBURG, J.

Action by plaintiff Roebling's Sons Company to foreclose a mechanic's lien upon an electric transmission line, the property of the Nebraska Electric Company, and for the construction of which plaintiff had furnished copper

wire. The Chicago Savings Bank & Trust Company, hereinafter called defendant, claim a prior lien by virtue of a trust deed. The sole controversy presented is between these two lien claimants. The trial court found that the mechanic's lien was the superior one, and from that decision and the decree in accordance therewith the trustees for the defendant and for others holding bonds secured by the trust deed bring this appeal.

In March, 1917, the Nebraska Electric Company purchased the electric light and power plants situated, respectively, in the towns of Creighton, Wausa, Bloomfield, Hartington, Wakefield, and Emerson, all in Nebraska. During that month, and, in fact, to procure funds to apply upon the purchase price, the Nebraska Electric Company executed and delivered to the defendant Chicago Savings Bank & Trust Company the trust deed in question. This trust deed, or mortgage, as we shall call it, was, during April, 1917, filed of record in the several counties where the properties were situated. The mortgage by its terms covered, by specific description, the real estate of each one of the electric lighting plants and, by general terms, all buildings and improvements, the distribution systems in and about said towns, together with all the appurtenances of said plants and systems. There was superadded to these several descriptions the following general description of property intended to be covered by the mortgage:

"All engines, boilers, stacks, tanks, condensers, heaters, pumps, switchboards, dynamos, batteries, generators, pipes, connections, transformers, boilers, wires, meters, machinery, fixtures, tools, appliances and equipment of every kind and nature constituting the electric light and power plants in each of the above-named cities and villages and the distribution systems connected therewith or appertaining thereto, with all the appurtenances and property of every kind relating to or used or intended for use in connection with said plants and systems, and all contracts, accounts, and other things of value pertaining

to the business heretofore conducted through or in connection with any of said plants, and the good will of such business.

"All ordinances, contracts, franchises, instruments, licenses, privileges, revenues, income, profits and rights of every kind now or hereafter in any manner held, owned or enjoyed by said Nebraska Electric Company; and all property, real, personal and mixed, of every kind and description, not hereinabove specifically described, now owned or hereafter acquired by said Nebraska Electric Company."

The mortgage provided for the immediate issuance of $100,000 in bonds, which bonds were issued and sold and the net proceeds delivered to the Nebraska Electric Company. The mortgage further provided for the immediate issuance of another $25,000 in bonds. The proceeds from the sale of these bonds, it was provided, should be paid to the Nebraska Electric Company from time to time, and only in payment or to reimburse the company "for expenditures for, not more than four-fifths of the actual cost, and in no event for an amount exceeding the reasonable value, of property constructed or acquired as and *for permanent additions to and extensions of the property of the company.*"

In September, 1917, the Nebraska Electric Company began the construction of the high tension electric transmission line in question. This line was to extend from Creighton for a distance of 3½ miles to Bazile Mills, thence 17½ miles to the town of Wausa, and thence several miles to the town of Bloomfield, with the object of connecting the several electric lighting plants of the company for the purposes of economy and efficiency in operation, and for the purpose of allowing the steam generating plant at Creighton to furnish power to the other plants connected by this line.

During the time that this work of construction progressed, the expenditures upon this and other improvements of the several plants were certified to the trustee

under the mortgage. The $25,000 in bonds was issued and sold on the receipt of these certificates, and from time to time the net proceeds of these sales were remitted to the Nebraska Electric Company until, on November 14, 1917, the company had received the remainder of the proceeds of these bonds owing to it under its agreement.

The certificates upon which the proceeds of this $25,000 in bonds were issued did not cover expenditures made upon the transmission line alone. There are items, some in the certificate of August 28, 1917, amounting to a total of $149.80, which are attributable to the expense of construction of this transmission line, and, in the certificate of November 14, it appears that $21,380.71 had been expended upon the transmission system "connecting Creighton, Bazile Mills, Wausa, and Bloomfield." In that certificate, it may be further said, expenditures on improvements, other than on the transmission line in question, were also shown, making the total of the expenditures certified for improvements and extensions $30,909.38. On receiving this certificate the trustee remitted a balance of $20,407.48 as proceeds from the sale of bonds.

It was upon these certificates of August 28 and November 14, and thus in part upon the faith of these expenditures in the construction of the transmission line in question, that the trustee remitted the proceeds of the sale of the $25,000 in bonds.

The Nebraska Electric Company continued with the construction of the transmission line, and on January 8, 1918, poles had been set the entire distance, except for 1½ miles between Wausa and Bloomfield, and wire had been strung for some 2 miles distant beyond Bazile Mills toward Wausa.

It was at that time and at that stage of the construction of this transmission line that the plaintiff, under contract of December 8, 1917, delivered its copper wire. The wire so delivered was used on that part of the line from a point 1½ miles east of Bazile Mills to Wausa Junction,

a point just outside of the town of Wausa. On March 1, 1918, plaintiff filed a claim for a mechanic's lien.

The trial court held a mechanic's lien attached to that portion of the transmission line extending from Bazile Mills to Wausa Junction, but that such lien attached to no other part of the Nebraska Electric Company's property, and that such lien was superior to defendant's mortgage.

Plaintiff contends that the transmission line across the country and along the highways, not constructed upon real estate belonging to the Nebraska Electric Company, but upon property in which the said company had only a license and no title interest, was personal property, and that defendant's mortgage would not attach to such personal property acquired by the Nebraska Electric Company after the mortgage had been given.

This court has held that a mortgage, which is given to cover personal property to be afterwards acquired, or which is not in existence, as on crops yet to be planted, or on the future increase of live stock, will not attach to such properties which are afterwards acquired or afterwards come into existence, unless there is some new and intervening act on the part of the mortgagor, after he has become possessed of the property, sufficient to subject the property to the lien of the mortgage. *Cole v. Kerr*, 19 Neb. 553; *Battle Creek Valley Bank v. First Nat. Bank*, 62 Neb. 825.

In these cases the court pointed out that, to allow a person to mortgage properties which were to be acquired through his labor, would virtually be allowing him to mortgage his labor in advance of its performance, and it seems such was the primary reason given in this state for refusing to give such mortgages any validity. The principle has been extended, however, to the mortgaging of personal chattels generally, such as furniture to be afterwards acquired and placed in a hotel (*New Lincoln Hotel Co. v. Shears*, 57 Neb. 478), and to building materials which were to be afterwards purchased for the construc-

tion of extensions to a street railway system, but which materials were, in fact, never so used. *Steele v. Ashenfelter*, 40 Neb. 770.

In these cases the court has taken the position that it is against public policy to permit a person to mortgage what he does not have. A mortgage of future acquisitions might deter one from the effort of making acquisitions or of producing such property.

In each of these cases the after-acquired property, sought to be subjected to the lien, had no potential existence at the time the mortgage was given, and the property sought to be covered was in no sense an after-acquired accessory or appurtenance to property already in existence and covered by the mortgage.

We think the above-mentioned cases are quite different from the case of a mortgage given on a mechanical establishment, and which covers the entire property constructed, or to be constructed, and such future improvements, additions and extensions as are to become appurtenant parts of such original property. Where the original property is improved by an extension or a newly added appurtenance, such addition is not a new and independent property, but becomes an integral part of the old, and, though the original property may be improved in character and value, it would be difficult, if not impossible, to segregate in all cases the original properties from their improvements. Such mechanical establishments are constantly undergoing changes, due to the requirements of repair, obsolescence, and the necessity for progressive extensions and improvements. A denial of the right of the owners of such plants to provide that the mortgage should cover all after-acquired appurtenances to the plant would, through the course of time, by the process of improvements and changes in the plant, gradually allow a destruction of the original security of the mortgage.

The transmission line in question was an appurtenance to the electric lighting plants covered by the mortgage. It was an accessory to the plants. It was constructed

with a view only to assist in their operation. It could be utilized for no other purpose. Taken by itself, it is without use or value, except as salvage, a mere string of poles and wires, insufficient as security for either a mortgage or mechanic's lien, but, as an integral part of the electric system, it will no doubt produce substantial economies in operation and, as such, be a valuable property.

The terms of the mortgage are clearly sufficient to cover the property here involved. It is not essential that the transmission line be an indispensable part of the plant, in order that it be held to be an appurtenance, or that it be so interwoven with the entire system that the plants could not be operated without it, but it is enough that it was constructed solely as a part of the system, as an extension and improvement of it, and to assist in the operation of the work.

The court, in *Brady v. Johnson,* 75 Md. 445, where the question was raised as to whether the newly-added property had become such a part of the original plant as to be subject to the lien of a mortgage, containing an after-acquired property clause, said (p. 449) : "The levy upon the property in the possession of the trustees has been made upon the theory and contention, as set forth in the answer of the judgment creditors, that such property as that described in the schedule of the sheriff is not necessary or essential to the operation of the canal, and therefore it is liable to execution. But from the nature of the property, its location, and connection with the canal and the use heretofore made of it, I cannot hesitate to conclude that the property levied on is needed and essential to the operation of the canal. *It is not a question whether the property be absolutely necessary or indispensable to the operation of the work, but whether it has been used, or is of a nature to be of practical use, in operating the work.* The wharf, and parcel of land connected therewith, as described, would certainly appear to be of a nature to be essential to the operation of the canal, and, from the evidence in the case, I think all the property

levied on is and will be of practical use in conducting the affairs pertaining to the canal and its operation. And that being so, it is clear, upon well-settled principles, that an execution will not lie, or will not be allowed to be executed against such property."

Electric transmission lines and similar structures, though extending beyond the real estate upon which the mechanical plant is situated, have been quite generally held to be such an appurtenance to the plant as will be considered a part of the plant and pass under a clause of a mortgage subjecting after-acquired property to the lien, and, furthermore, are held to be such an integral part of the plant as to subject the entire plant to a mechanic's lien for work or materials rendered or furnished in the construction of such extension. *Southern Electrical Supply Co. v. Rolla E. L. & P. Co.*, 75 Mo. App. 622; *Badger Lumber Co. v. Marion Water Supply, E. L. & P. Co.*, 48 Kan. 182, 187, 15 L. R. A. 652; *Stearns L. & P. Co. v. Central Trust Co.*, 223 Fed. 962; *Steger v. Arctic Refrigerating Co.*, 89 Tenn. 453, 11 L. R. A. 580; *Keating Implement & Machine Co. v. Marshall E. L. & P. Co.*, 74 Tex. 605; *Metropolitan Trust Co. v. Dolgeville E. L. & P. Co.*, 71 N. Y. Supp. 1055; *Wells v. Christian*, 165 Ind. 662; *New England Water Works Co. v. Farmers Loan & Trust Co.*, 136 Fed. 521; *Westinghouse Electric Mfg. Co. v. Citizens Street R. Co.*, 24 Ky. Law Rep. 334.

In the case of *Metropolitan Trust Co. v. Dolgeville E. L. & P. Co., supra,* the court, speaking as to the policy of the law in that respect, said (p. 1058): "The mortgage in question, as must generally happen in such a case, was executed to secure bonds running for a long period of time, and liable to be scattered in the hands of many holders. It probably was executed, and said bonds issued (and in most cases a similar course would be followed), for the purpose of securing money with which to build and equip a plant. Every corporation of the same class as that to which defendant belongs will, at least if it is successful and prosperous and thrifty, desire from time

to time to extend its plant, purchase more modern machinery, and replace old and worn-out construction with new construction. It becomes practically a matter of public necessity that, if bonds such as those involved in this action are to be available and merchantable in the public market, they must be secured through the lien of a mortgage upon such extensions and new property. No other course is practicable if the security and standing of the bonds is to be maintained. If this course is not allowed, the more prosperous and more progressive a corporation issuing the bonds becomes, the less valuable the security of the latter through interchange of old property for new."

It is urged by the plaintiff that the line in question was not an appurtenance nor an integral part of the plants, since it had never been completed, nor in operation, and hence had not become useful or beneficial or an accessory to the plants. It was, however, constructed from the company's property at Creighton to Bazile Mills, and from there partially completed to and through the town of Wausa. It was attached to the plant of the company at the point where the construction of the line began and was obviously constructed as an appurtenance to the plant. Though only partially completed, that did not prevent its character as an appurtenance from attaching. The object with which it was being constructed determined its relation to the main properties.

For still another reason we believe the property should be held subject to the lien of the mortgage. There was a new and intervening act between the parties to the mortgage, which, as we view it, would subject the property to the lien. After the electric transmission line had been partially constructed, and some $21,000 had been expended upon it, the mortgage trustees forwarded the proceeds of the $25,000 bond issue, with the express intention that the moneys were to reimburse the Nebraska Electric Company for the expense of this construction. Certainly, the Nebraska Electric Company could not ac-

cept such moneys and deny that the transmission line, on the faith of the construction of which the moneys were advanced, had not become subject to the mortgage lien.

The plaintiff, when it furnished its copper wire, was charged with notice of that provision of the mortgage, requiring the defendant to make immediate remittance of the proceeds of the $25,000 in bonds, in proportion to the value of the extensions of property that the Nebraska Electric Company should, from time to time, undertake and create. Plaintiff was bound to know that the structure in question was an extension and an accessory to the plants covered by the mortgage. Manifestly, it could be nothing else. It was, in any event, covered by the terms of the mortgage as a "permanent addition or extension," owing to its close relation to the principal properties, and plaintiff was charged with notice that the mortgagee was obligated to advance moneys to pay for or reimburse the expense of its construction. The fact that the mortgage was filed and moneys advanced prior to the furnishing of the materials, upon which the claim of the mechanic's lien was based, would, on this theory of the case, give the mortgage priority. *Creigh Sons & Co. v. Jones,* 103 Neb. 706; *Byers v. Chase,* 102 Neb. 386.

It is contended that the mortgagee was a promoter, and that the Nebraska Electric Company was merely an instrumentality through which the mortgagee acted, and that, for this reason, the rights of the mortgagee should be held subordinate to the claims of laborers and material men, who had contributed to the construction of the property. The record, however, fails to bear out this contention. What the value of these several plants was, in comparison with the initial $100,000 advanced to the Nebraska Electric Company, does not appear, and, without some other and further showing, the fact that the money advanced was applied upon the purchase price of these plants and that provision was made in the mortgage for the further issuance of bonds to provide moneys for such extensions or improvements of the plants as the

Nebraska Electric Company should make, does not bring the case within the promoter rule. It does not appear that the mortgagee had any direction or control over the use of the funds to be furnished under the mortgage, nor that the mortgagee had required or could order or direct that any extensions or improvements should be made. The mere fact that the mortgage money was given with the intention that it should be used in the purchase or in the improvement or extension of the property does not render the mortgage subordinate to the mechanic's liens thereafter attaching. *Henry & Coatsworth Co. v. Halter,* 58 Neb. 685; *Byers v. Chase, supra; Patrick Land Co. v. Leavenworth,* 42 Neb. 715; *Hoagland v. Lowe,* 39 Neb. 397; *Chaffee v. Sehestedt,* 4 Neb. (Unof.) 740; *Grand Island Banking Co. v. Koehler,* 57 Neb. 649; *Creigh Sons & Co. v. Jones, supra,* 27 Cyc. 238.

A further objection is raised to the right of the trustee under the mortgage to bring this appeal. This objection is based upon the assertion that the defendant Chicago Savings Bank & Trust Company is the holder of all the bonds under the trust deed, and is the real party in interest, and should, itself, have appealed, if the decree of the lower court was unsatisfactory to it. The record, however, by stipulation shows that the bonds are owned by this defendant, or have been sold by it to *bona fide* purchasers for value. The trustee represented all bondholders. The company's mortgage provided that no bondholder should have the right to institute suit for foreclosure or proceedings to protect rights under the mortgage unless the holders of one-third of the bonds should request the trustee to do so, and he, after reasonable opportunity, have refused or failed to act. It was clearly the intention, as indicated by the mortgage, that the trustee was to act in such proceedings for the protection of the interests of the bondholders. It seems clear to us that under such a contract, and in view of our statute (Rev. St. 1913, sec. 7585), the trustee clearly had the right to bring the appeal. See 3 C. J. 656, sec. 524.

As the case is presented, it appears that a determination of the validity of the mortgage as to the property in question, and its priority as to the mechanic's lien, settles the matters in controversy.

For the reasons given, the judgment of the lower court is reversed and the cause remanded for further proceedings.

REVERSED.