[No. 24885.    Department One.    April 25, 1934.]

BERNARD REITER, *Respondent*, v. HORACE P. CHAPMAN *et al., Defendants,* THE CONVERSE COMPANY, INC., *Appellant.*[1]

[1]Reported in 31 P. (2d) 1005.

*Caldwell & Lycette,* for appellant.

*Alfred J. Schweppe* and *Winlock Miller, Jr.,* for respondent.

BEALS, C. J.—Plaintiff, a taxpayer of the port of Seattle district, instituted this action against the commissioners of the port of Seattle and the Converse Company, Inc., a corporation, for the purpose of obtaining a decree enjoining the performance of written contracts, dated May 25, 1933, between the port of Seattle (hereinafter referred to as the port) and the Converse Company, Inc. (hereinafter referred to as Converse), whereby Converse contends that the port purchased materials comprising a fire-protection system for the Bell Street Terminal, owned and operated by the port, for the sum of $18,950, Converse agreeing, by a second writing, to install the system for an additional two thousand dollars. The trial resulted in a decree enjoining the defendants from carrying out the contracts. From this decree, defendant Converse alone has appealed.

Appellant assigns error upon the ruling of the trial court overruling its demurrer to respondent's complaint, upon the refusal of the court to grant appellant's motions, respectively, for a nonsuit and a dismissal of the action, upon the ruling of the court to the effect that the contracts of purchase and installation hereinabove referred to were void, and upon the entry

of the decree permanently enjoining further proceedings thereunder.

But a single question is presented on this appeal: Whether, under the law, the port of Seattle can purchase the material referred to in the agreement with Converse without having previously advertised for bids. The pertinent portion of the statute governing purchases by a port commission is found in Rem. Rev. Stat., § 9693, and reads as follows:

"All materials required by the port district may be purchased in the open market or by contract, and all work ordered may be let by contract or done by day labor as the port commission may determine. Before awarding any contract the port commission shall cause to be published in some newspaper within the district a notice for at least ten days before the letting of such contract, inviting sealed proposals for such work, plans and specifications for which must at the time of publication of such notice be on file in the office of the port commission subject to public inspection: *Provided, however,* That port commission may at the same time and as part of the same notice, invite tenders for such work or material upon plans and specifications to be submitted by the bidder. Such notice shall state generally the work to be done and shall call for proposals for doing the same to be sealed and filed with the commission on or before the day and hour named. Each bid shall be accompanied by a certified check payable to the order of the port commission for a sum not less than five per cent of the amount of the bid, and no bid shall be considered unless accompanied by such check. At the time and place named such bids shall be publicly opened and read and the commission shall proceed to canvass the bids and may let such contract to the lowest responsible bidder upon plans and specifications on file, or to the best bidder submitting his own plans and specifications. If, in the opinion of the commission all bids are unsatisfactory, they may reject all of them and readvertise, and in such case all checks shall be returned to the bidders; but if such contract be let, then in such case all checks shall be

returned to the bidders, except that of the successful bidder, which shall be retained until a contract shall be entered into for the purchase of such materials or doing such work, and a bond given to the port district for the performance of the contract and otherwise conditioned as required by law, with sureties satisfactory to the commissioners, in an amount to be fixed by the commission, but not in any event less than twenty-five (25) per cent of the contract price. If said bidder fails to enter into said contract in accordance with said bid and furnish such bond within ten days from the date at which he is notified that he is the successful bidder, the said check and the amount thereof shall be forfeited to the port district.''

The facts giving rise to this litigation may be stated briefly as follows, there being little, if any, controversy between the parties as to the facts: The port has for many years operated in the city of Seattle the Bell Street Terminal and the Lenora Street Docks. It was conceded that these properties were very inadequately protected against loss by fire, both in regard to the fire-alarm system and the facilities for fire control.

Prior to the year 1933, officers of the port had been investigating fire-protection devices, with a view to the installation of a better system. During the month of April, 1933, Converse submitted to the port a proposal looking toward the installation of its equipment, and the matter was considered at a meeting of the commissioners held April 25. At the suggestion of a competing company, the matter was continued to May 12, and then until May 16, at which time a majority of the commissioners passed a resolution directing the proper officers of the port to enter into a contract with Converse for the purchase and installation of its "Auto call" system.

Immediately thereafter, three contracts were entered into between the port and Converse, covering various

portions of the proposed installation, whereupon summons and complaint were served in an action wherein the plaintiff in this cause was plaintiff, the relief sought being an injunction against the execution and carrying out of the contracts. Shortly thereafter, the port, by resolution, annulled and cancelled the three contracts above referred to, and ordered that the equipment desired be purchased in the open market. The commissioners of the port further resolved that the work of installing the materials be done by day labor under the supervision of the port's chief engineer.

Contracts were forthwith signed between the port and Converse providing for the purchase of the materials by the port and for the installation thereof by Converse under supervision of the port's engineer. This suit was thereupon instituted to enjoin further proceedings in the premises, with the result above stated.

Appellant argues, in the first place, that, in the absence of an express statute, no public advertising or competition is required in making public purchases or letting public contracts. In support of this proposition, many authorities are cited. The rule is laid down in 19 R. C. L. 1068 as follows:

"In the absence of special statutory provision there is no requirement of law that a municipal corporation about to enter into a contract for the construction of a public work advertise for bids and let the contract to the lowest bidder, nor will a statute providing that the municipal authorities may advertise for bids be construed as mandatory."

From the foregoing proposition, with which we are disposed to agree, appellant advances to its next position, arguing that statutes requiring public advertising and competition

" . . . are rather strictly construed and closely restricted to cases clearly falling within their express terms."

With this proposition, we are not in accord. While it is true that the courts may not amend a statute by adding words which do not appear therein, still, when a legislative policy clearly appears, in appropriate cases that policy will be considered in construing statutes presented for judicial interpretation.

The principle of giving notice of proposed public contracts is, broadly speaking, in the public interest, and when the legislative authority has indicated, as has that of this state, that it has adopted the general policy of requiring that notice be given of proposed public contracts, the courts will not, by strict construction, narrow the scope of a statute and limit its application in cases where such a construction is apparently against the legislative policy.

Statutes controlling the making of contracts by the officers of municipal corporations are laws for the protection of the public and those who support public agencies by the payment of taxes. Generally speaking, a sound public policy supports the proposition that a reasonable notice shall be given of the letting of public contracts, in order that, by competition in bidding, the public may receive the benefit of the greatest possible value for the least expenditure. *Grace v. Fobes,* 118 N. Y. Supp. 1062.

The portion of Rem. Rev. Stat., § 9693, above quoted provides, in the first place, for the purchase in the open market or by contract of materials required by the port, and further, that "work ordered" may be contracted for, or performed by day labor. The statute continues by directing that, before any contract may be awarded, notice shall be published for at least ten days before the letting of any contract, in-

viting sealed proposals "for such work." In this connection, "the work to be done" is again referred to in the statute.

Appellant contends that the statute differentiates consistently between "materials" and "work," and that the latter word refers only to labor. Consequently, appellant argues that, when the statute provides for publication of a notice inviting proposals "for such work," this particular portion of the statute applies only to proposed contracts for labor. By the proviso in the portion of the statute above quoted, the port in the same notice may invite tenders for "such work or material upon plans and specifications to be submitted by the bidder."

Later in the statute, after providing for the return of deposits made by unsuccessful bidders, it is directed that the check of the successful bidder "shall be retained until a contract shall be entered into for the purchase of such materials or doing such work."

We can not follow appellant in its argument that the publication of a notice "inviting sealed proposals for such work" limits the requirement of notice to proposed contracts for labor alone, and that, in entering into contracts for the purchase of materials, no notice need be given.

The statute must be construed as a whole, and we are satisfied that, in determining the questions here presented, it must be held that it clearly appears from the act that the legislature had in mind the generally recognized principle that advance notice of proposed public contracts should be given, so that bids may be made by persons desiring to contract with a port to furnish that which the commissioners desire. The word "work" imports not only manual labor, but that upon which labor is expended or that which is produced by labor. The meaning of the term "public works"

is too well known to require definition. The phrase "such work" for which sealed proposals are to be invited by notice imports, not alone labor, but a construction or improvement, and may import both materials and labor.

The supreme court of Wisconsin, in the case of *Chippewa Bridge Co. v. Durand,* 122 Wis. 85, 99 N. W. 603, 106 Am. St. 931, in construing a statute somewhat similar in purpose to that now under consideration, held that the word "work" should be construed as including "the products of work other than mere merchandise." The case is also in point upon the question of the principle to be followed in construing a statute providing for the giving of notice prior to the making of public contracts. The court refused to restrict the meaning of the word "work" to "the mere expenditure of physical or mental energy to some municipal end," holding that such a construction of the word would violate the manifest policy of the statute.

It is true, as argued by appellant, that the statute of Wisconsin, construed by the supreme court of that state in the case cited, did not refer to both work and materials, the former word alone having been used. The case, therefore, is not controlling here, but is in point only as to the import of the word "work." We are satisfied that, in the statute of this state now before us for construction, the word "work" was not, in all cases, used therein in its restricted sense as applying merely to labor.

Appellant also argues that the statute of Wisconsin is in its nature strictly competitive, while our statute can not be so construed. It is true that the proviso in our law allows the port commission to invite tenders for work or material "upon plans and specifications to be submitted by the bidder." A call for offers under this proviso is, of course, less competitive

than a call for bids which must be based upon the same plans and specifications. The statute, however, does provide for competition, although not necessarily in all cases in the fullest sense of the word.

Appellant contends that the articles which appellant, under the contract here under attack, agreed to furnish are not "materials" within the meaning of the statute, but should be held to be "appliances, apparatus, equipment, supplies, or some other classification." Under this heading, appellant presents an ingenious argument, which, however, fails to convince us that the commissioners were authorized to proceed as they did without first having given the notice provided for by the statute. The procedure followed by the parties clearly indicates a transaction other than a purchase of material in the open market. In this connection, we have read the case of *Harvey v. Denver*, 92 Colo. 114, 18 P. (2d) 321, relied on by appellant, in which a transaction was held to have been a purchase in the open market. The case, while supporting certain of appellant's contentions, differs from that now before us, and is not persuasive as to the ultimate question to be here determined.

The agreement entered into between the port and appellant imports more than a purchase of material in the open market, and clearly constitutes a contract between the parties of such a nature as brings it within the "notice" provision of the statute. The articles purchased were to be delivered at appellant's convenience, within one hundred days from the date of purchase; $10,565 of the purchase price to be paid at the time of final delivery, the remainder to be paid in monthly installments. The material was guaranteed for five years, subject to proper installation. The contract itself repeatedly refers to the articles sold as

materials, and in appellant's offer to install the equipment the same word is used.

We are clearly of the opinion, from the entire record, that the transaction was not a purchase of material in the open market.

■ Appellant argues that the equipment which it was to furnish is of a specialized character, and that, in such a case, competition is impossible. By the motion for the passage of the resolution authorizing the transaction with appellant, the officers of the port were instructed to "purchase materials in the open market," following the language of the statute. Assuming that the port might have called for bids and by its call limited competition, no such question is now before us. It appears that other persons were able to compete with appellant in furnishing the improvement which the port desired. So far as appears from this record, the matter was a proper subject for competitive offers.

To discuss all the arguments advanced by appellant would extend this opinion to unreasonable length. We are clearly of the opinion that the trial court did not err in holding that, in the transaction between the port and appellant, the procedure outlined by statute as governing such matters was not followed, and that the decree in respondent's favor was properly entered. The same is accordingly affirmed.

MILLARD, MAIN, MITCHELL, and STEINERT, JJ., concur.