## MUTUAL LUMBER CO. v. SHEPPARD et al.

### No. 9377.

Court of Civil Appeals of Texas. Austin.
June 23, 1943.

Motion for Rehearing Overruled
July 21, 1943.

Sleeper, Boynton, Darden & Burleson, of Waco, and Hart & Brown, of Austin, for appellant.

Gerald C. Mann, Atty. Gen., Ocie Speer, Asst. Atty. Gen., Glenn R. Lewis, Asst. Atty. Gen., Harold McCracken, Asst. Atty. Gen., and Fowler Roberts, Asst. Atty. Gen., for appellees.

BLAIR, Justice.

Appellant, Mutual Lumber Company, sued the State's Comptroller, Treasurer and Attorney General to recover certain chain store taxes paid under protest. The facts were stipulated and the sole question for determination is whether appellant is exempt from payment of the taxes under that portion of the Chain Store Tax Law (§ 5, Art. 1111d Vernon's Ann.P.C.), which reads: "Provided that the terms, 'store, stores, mercantile establishment or mercantile establishments' wherever used in this Act shall not include: wholesale and/or retail lumber and building material businesses engaged exclusively in the sale of lumber and building material."

Appellant operates twelve stores, and its associate, Calcasieu Lumber Company, operates one store, thus making a chain of thirteen stores operated and controlled under the same majority stock ownership. Each of these stores sells lumber and building materials, and is commonly known as a lumber yard. Appellant admitted that five of its stores and Calcasieu Lumber Company sell certain articles or merchandise which do not come within the meaning of the term "building materials" as used in the statute; and as to the taxes paid on such stores appellant abandoned its claim for refund. The seven stores left sell certain items of merchandise which appellees asserted were not building materials, but which appellant asserted were building materials. Of these items the trial court held that items grouped or listed as hand tools, such as paint brushes, glass cutters, saws, hammers, axes, files, chisels, screw drivers, planes, hatchets, bits, shovels, hoes and rakes are not "building materials" within the meaning of the statute exempting businesses engaged in selling them from payment of the tax; and also held that electric light globes are not building materials. All but one of appellant's stores sell some or all of these hand tools. The store at Fredericksburg sells none of them. One store located at Georgetown sells electric light globes. Appellant was denied a refund of the taxes paid except as to the store at Fredericksburg and for which it was awarded a refund of $143.01. From this judgment holding the hand tools listed not to be building materials, appellant has appealed. It makes no point or contention that electric light globes are "building materials" as that term is used in the statute.

The trial court further held that the following grouped items of merchandise or materials, some or all of which each store of appellant sells, come within the meaning of the term "building materials" as used in the statute:

Group 1. Gears, tails and fans, sucker rods and cylinder barrels for windmills. Only the store of appellant located at Fredericksburg sells such materials or merchandise.

Group 2. Cedar fence posts, barbed wire, red picket fence, staples and hasps, bolts and washers, padlocks, iron and clay sewer pipe, cast and galvanized iron pipe, pipe fittings, bath tubs, commodes, sinks, lavatories, gas water heaters, electric light fixtures, electric switches, electric receptacles, electric receptacle plates, porcelain insulating tubes, porcelain knobs for electric wiring, electric wire, gas burners, metal

grills, thermostats, exhaust grills for attic fans, timostat electric switches, and septic tanks.

Appellees have appealed from the portion of the judgment holding these two grouped items of merchandise or materials to be "building materials."

Appellant Lumber Company contends that the items grouped as "hand tools" are "building materials" within the meaning of such words as used in the statute, because it imposes a special tax, applicable only to a particular class of businesses, and must be liberally construed in favor of the taxpayer; and because it deals with a particular trade or business the words "building materials" must be given the meaning or signification attached to them by experts in the trade or business. Appellant further contends that in any event hand tools are within the ordinary meaning of the words "building materials" as used in the statute. As persuasive of its views or contentions appellant introduced in evidence opinions of the Attorney General and letters of the State Comptroller showing that in the enforcement of the statute for several years they construed the words "building materials" to include · hand tools, as well as all of the items listed in groups 1 and 2.

We are of the view that the trial court correctly held that the hand tools listed are not "building materials" within the meaning of such words as used in the statute.

■ The Chain Store Tax Law imposes an occupation tax upon the chain store method of doing business. Hurt v. Cooper, 130 Tex. 433, 110 S.W.2d 896. It applies to all sorts of businesses operated under the chain store method, and was enacted primarily for revenue purposes. It is not a special tax, but applies alike to all sorts of businesses not expressly exempted which operate under chain store methods or systems. It was first passed by the 44th Legislature in 1935. Acts 44th Leg., 1st C.S., p. 1589. It originated in the House as a revenue measure, and as first passed by the House exempted from its operation "wholesale and/or retail lumber and building material businesses." The Senate amended the House bill by adding the words, "engaged exclusively in the sale of lumber and building material", and as finally enacted the statute exempted "wholesale and/or retail lumber and building material businesses engaged exclusively in the sale of lumber and building material" from the payment of the tax imposed. By this language the Legislature clearly limited the exemption to "lumber and building material businesses engaged exclusively in the sale of lumber and building material." Thus it excluded from the exemption businesses which are also engaged in the business of selling other merchandise or material not within the meaning of the words, "lumber and building material," as used in the statute. This was the evident intention of the Legislature. The exemption was also intended no doubt to encourage the construction of buildings of all kinds, thus creating permanent and valuable properties subject to taxation. The business of selling lumber and building materials is not a peculiar one, but is one of the oldest and best known businesses in existence. It is the business to which all persons go when they desire to construct or erect any sort of house, store, fence, barn, storage place, edifice, or structure designed for the habitation of men or animals, or for shelter or protection of property; and the Legislature clearly intended to use the words "building materials" in their broadest but ordinary sense or meaning, and to include anything essential to the completion of a building or structure of any kind for the use intended.

No Texas case directly in point is cited or found. It is generally held, however, that the meaning of the noun "building" depends usually upon the particular facts and circumstances of each case, controlled largely by the intention of the parties, or by the aim or purpose of a particular statute. The noun "building" has been generally held to include any edifice erected by the hand of man of lumber, iron, stone, brick, wood, marble, cement, or any other substance, connected together, and designed for any use in the position fixed; or to include an edifice, an erection, a fabric built or constructed; a structure designed for the habitation of men or animals, or for the shelter and protection of property. Whenever the noun "building" is used in this sense it has been held to include all sorts of structures, fabrics built or constructed, edifices or erections used or useful to man. See 12 C.J.S., Building, pp. 382, 383, for a list of such buildings or structures.

■ The meaning of the adjective "building", when used to define or describe the noun "material" or "materials" as used

498

in the instant statute, is usually regarded as including all materials essential to the erection or construction of a house or other structure used for the habitation of man or animals, or for the protection and shelter of property.

■ The words "building materials" as used in the statute were clearly intended to be used in their ordinary acceptation or signification. They are not technical words. The meaning of the words "building materials" as employed in the statute is well known to the businesses which sell them as well as to the purchasers and users of them. This was clearly the sense in which the Legislature intended to use them, and manifestly the Legislature did not intend to require the officials charged with the collection of the tax to ascertain a trade or peculiar meaning of the words "building materials." The aim or purpose of the statute was to exempt the businesses engaged exclusively in the sale of such materials from the payment of the tax imposed upon other businesses engaged in the sale of other merchandise under the chain store method, or engaged in the sale of other merchandise along with the sale of "building materials."

■ The foregoing represents the interpretation which the great weight of authority places upon the words "building materials." 12 C.J.S., Building, p. 389. It is true a slightly more limited use is made of the word "building" in connection with criminal law. See 7 Tex.Jur. 724, 725, and cases there cited. While the statute in question has been placed in the Penal Code it is primarily a revenue measure. It deals with and attempts to define a lawful business as being one "engaged exclusively in the sale of lumber and building material;" and the criminal feature is in aid of the collection of the tax imposed. The Legislature placed no other limitation on the words "lumber and building material," except the limitation which the words themselves import, and it clearly intended to include in such words every kind of lumber and building materials ordinarily sold by those engaged exclusively in such businesses and used and essential to the erection and completion of any edifice, structure, erection, fabric built or constructed, designed for use in the position in which it is fixed.

■ Running through all the cases representing the majority thought is the view, however, that the words "building ma-

terials" are limited to those things which go into and become a part of a building, edifice or structure, and for that reason the cases hold that hand tools like the ones listed are not "building materials." Such hand tools, hammers, saws, screw drivers, etc., are not building materials. They are used only in the fabrication or construction of the edifice, structure or building. They are implements and tools for building, but they survive their use, and unlike the building materials actually wrought into the structure they do not perish with their use in connection with the construction of the building. Goedecke v. Zurich Gen. Accident & Liability Ins. Co., Mo.App., 7 S.W. 2d 309; Troy Public Works Co. v. City of Yonkers, 207 N.Y. 81, 100 N.E. 700, 44 L. R.A.,N.S., 311; Schaghticoke Powder Co. v. Greenwich, etc., Co., 183 N.Y. 306, 76 N.E. 153, 2 L.R.A.,N.S., 288, 111 Am.St. Rep. 751, 5 Ann.Cas. 443; and Stone v. Morrison & Powers, Tex.Civ.App., 294 S. W. 641, 644, which holds that the "word 'material' means the 'substance of which anything is made.'" And as pointed out in these cases, such hand tools remain the property of the carpenter or builder, for use in the construction of other buildings.

■ With respect to the appeal of appellees, we think that all items listed in groups 1 and 2 are "building materials." Gears, tails and fans, sucker rods, and cylinder barrels, pipe and pipe fittings, bolts and washers are parts of a windmill. The entire structure of a windmill is often so fabricated or constructed into a building or edifice erected as to become an integral part of it. Considered as a separate structure a windmill is an edifice, connected together, and designed and intended for use in the position fixed on the land to supply water for men and animals. It is considered as permanent in nature, except as to wear and tear of moving parts. In supplying water a windmill is as essential to the use of land as is any house, barn, store, shed, or other structure for the habitation of men or animals, or for their shelter and protection. And under the ordinary use or signification of the words "building materials" as used in the statute, and as applied to any useful structure, windmills and the gears, fans and tails, sucker rods, cylinder barrels, and other parts thereof are "building materials."

■ We are also of the view under the foregoing reasoning and authorities that cedar fence posts, barbed wire, red

picket fence, staples and hasps, or any other material out of which a fence is ordinarily built are "building materials" within the meaning of such words as used in the statute involved. A fence is an inclosure about a field or other space, or about any object, and is especially an inclosing structure of wood, iron; or other material, intended to prevent intrusion from without or straying within. Kinney v. Kinney, 104 Iowa 703, 74 N.W. 688, 40 L.R.A. 626. A fence is a structure used to protect man in the use of land and premises. It is as essential and useful in the use and occupancy of land as is any house, barn, shed, corral, or other useful structure. Numerous decisions from other jurisdictions hold that the noun "building" is usually regarded as including any useful structure on land. The following cases hold specifically that a fence is a "building" within the generally accepted view that a building is any useful structure erected by the hand of man of lumber, stone, iron, brick, wood, cement, or any other substance, connected together and designed for any use in the position fixed. Swasey v. Shasta County, 141 Cal. 392, 74 P. 1031; Wright v. Evans, 2 Abb.Prac., N.S., N.Y., 308; Livingston v. Ten Broeck, 16 Johns., N.Y., 14, 8 Am. Dec., 287; John T. Moore Planting Co. v. Morgan's, etc., Co., 126 La. 840, 53 So. 22; MacGregor v. Linney, 27 Ohio Cir.Ct. R. 490; and Bagiano v. Harrow, 247 Mich. 481, 226 N.W. 262.

It is true that the term "building" or "house" has been given a more limited use in criminal law. Johnson v. State, 96 Tex. Cr.R. 216, 257 S.W. 551. This and other similar decisions are controlled, however, not by the general acceptation or signification of the word "building", but by the specific statutory definition given to the word "house" or "building" and the word "fence" in relation to the offense of arson. These decisions have no application here; because under the aim and purpose of the statute here involved the words "building materials" were intended to be given their ordinary meaning or signification, and as including any materials for the building of any useful structure upon land.

Also, under the foregoing reasoning and authorities we are of the view that all the remaining items listed in group 2 are "building materials" as that term is used in the statute. It is the view of appellees that the words "lumber and building materials" were intended to include only articles which are in their raw or unfinished state, and

were not intended to include already finished or fabricated articles, such as are listed in group 2. These articles will not be repeated here, but reference is made to them. Suffice it to say that under modern building conditions and the conditions that existed at the time the statute was enacted, it is and was a matter of common knowledge that all such items or listed articles were manufactured products intended for use in the construction of modern homes, stores, hotels, churches, public buildings, and structures of all sorts intended for the use and habitation of men and the safe keeping or protection of property. They have no use except in connection with such structures. Most of them are fabricated into the building, and all of them are so attached to or constructed into the building in which they are intended to be used as to become an integral part of it. The mere reading of each item suggests that its particular use is in connection with or as an integral part of all sorts of buildings. Sanitary and fire hazard ordinances of cities and towns require the use of many of them in the homes, stores and public buildings. Standing alone, neither item listed has any use. It is only when they are attached to, or fabricated or constructed into such buildings that they become useful articles. The mere fact that such items have been themselves fabricated into finished articles or products does not distinguish them from lumber, brick, stone, wood, or other substance used in the construction of buildings, all of which are themselves fabricated to a certain degree before they are sold as lumber or building materials. This difference is not a distinction, but only one of degree in the fabrication of the finished products. The word "materials" has been held not to be limited to trees standing in the forest, or ore in the mines, etc. Grand Island Banking Co. v. Koehler, 57 Neb. 649, 78 N.W. 265. A fire protection system to be installed in a building was held to be building "materials." Reiter v. Chapman, 177 Wash. 392, 31 P.2d 1005, 92 A.L.R. 828. A lien given by our Constitution, Vernon's Ann. St. Const. Art. 16, § 37, to "material men, of every class" has been held to extend to gas fixtures, a cooking range, or an engine and boiler, when such "material is bought with the purpose of incorporating it into a building or improvements." Reeves v. York Engineering & Supply Co., 5 Cir., 249 F. 513, 517, opinion by Judge R. L. Batts. And it has been uniformly held that

the "conveyance or lease of building includes as a part thereof, under such description, the land under the building and that within the curtilage, yard, or inclosure belonging to the building and appropriate to its use." S. F. Bowser & Co. v. Cain Auto Co., Tex.Civ.App., 210 S.W. 554. We think it manifest that the Legislature intended to use the words "lumber and building material" in the statute involved with as broad meaning as the term "building" has been held to include or imply.

The contention that great weight should be given the departmental construction of the words "building materials" as including hand tools is not sustained. The facts upon which this contention is based are entirely similar to the facts in the case of Humble Oil & Refining Co. v. State, Tex.Civ.App., 158 S. W.2d 336, 341, error refused. The facts show that shortly after the statute involved became effective the Attorney General ruled that some of the hand tools listed were not building materials within the meaning of the statute. A week later he withdrew the opinion and held them to be building materials. The Comptroller followed this opinion, and by numerous letters informed various businesses and the State Tax Commissioner of this construction, and that the tax was not demanded of those engaged in the sale of hand tools, and practically all of the items appearing in groups 1 and 2. In November, 1941, the Attorney General ruled that hand tools and the items appearing in groups 1 and 2 were not building materials; and the Comptroller has followed that opinion in demanding and collecting the taxes involved in the instant case. We hold that clearly the language building materials cannot include hand tools. We hold that it clearly includes all items listed in groups 1 and 2. In consequence, the following rule announced in the Humble case controls the question presented: "In view of our above conclusion that the decision in the Standard case is based upon the holding that the language of the exclusion in question is clear and unambiguous, departmental construction is unimportant. As stated in Judge Critz's opinion in McCallum v. Associated Retail Credit Men, Tex.Com.App., 41 S.W.2d 45, 47: 'The rule that a departmental ruling adhered to through years of administering of a statute will be given weight, only applies to statutes of doubtful construction. Such a rule has no application to a statute, such as this, that is not

of doubtful construction or application. Ramsey v. Tod, 95 Tex. 614, 626, 69 S.W. 133, 136, 93 Am.St.Rep. 875.'"

Judgment of the trial court is affirmed.

Affirmed.

On Appellees' Motion for Rehearing.

Appellees cite Sec. 5a of the Chain Store Tax Act, Vernon's Ann.P.C. art. 1111d, which imposes the tax on public utilities engaged in selling electric or gas appliances and equipment in connection with the business of selling electric current or gas to the public, and contend that such enactment shows the legislative intent to either impose the tax on any business selling such items, or the related items listed in Group 2; or to declare that electric and gas appliances and equipment, or the related items listed in Group 2, are not "building materials" within the meaning of these words as used in Section 5 of the Act. Neither contention is sustained.

By Section 5a the Legislature imposed a particular "utility merchandising service" tax applicable only to a utility business engaged in the sale of either electric current or gas to the public. The Act specifically limited the tax to utilities engaged in selling such merchandise in connection with the business of selling either electric current or gas, defining the business taxed as "utility merchandising service," which classified such merchandising business for taxation purposes. Central Power & Light Co. v. State, Tex. Civ.App., 165 S.W.2d 920, 925, writ refused by the Supreme Court of Texas and certiorari denied by the Supreme Court of the United States. 63 S.Ct. 1033, 87 L.Ed. ——. Under this view of the Act it is immaterial whether or not electric and gas appliances and equipment are "building materials" within the meaning of the term as used in Section 5 of the Act, which exempts a business engaged exclusively in the sale of building materials from the payment of the tax. Manifestly, the whole purpose of the Legislature in enacting Section 5a was to impose a tax on utilities selling such merchandise in connection with their primary business of selling electric current or gas.

Nor did the Legislature attempt to define by Section 5a what are "building materials," or to declare that electric and gas appliances and equipment were not "building materials." Such matter was entirely foreign to the matter dealt with in Section 5a, which was limited to the matter of

imposing the chain store tax on "utility merchandising service," or as held in the Central Power & Light case, supra, to "selling appliances in connection with the business of supplying electric current and other utility products by utility corporations."

The motion for rehearing is overruled.

Overruled.