### JOHN LANDERS v. THE STATE.

No. 1909. Decided November 23, 1898.

**1. Arson by Means of Explosives—Indictment.**

Penal Code, article 761, provides that "the explosion of a house by means of gunpowder or other explosive matter comes within the meaning of arson," but it seems that to authorize a conviction under this article the indictment must be drawn specifically with reference to its terms.

**2. Same—Charge—Requested Instructions.**

Where an indictment for arson simply charged a burning by setting fire to the house, and the evidence showed that by force of an explosion (presumably caused by dynamite) a hole was torn in the roof and splinters and pieces of the paper roofing were found lying on the carpet on the floor, which were on fire and were smothered out by the owner, who also saw the fire between the paper roofing and rafters; and the court in effect instructed the jury that if they believed the explosion was by design, and that a portion of the roofing of the house was by said explosion blown out, and that fire was thereby communicated to the house, such burning would constitute arson; Held, that it was error to refuse a requested instruction to the effect "that the explosion of a house by means of explosive matter does not come within the definition of arson, unless it results in setting the house on fire." The error in the charge as given by the court was that the jury might feel authorized by it to find defendant guilty if certain portions of the house detached by the explosion were afterwards found to be on fire, though the fire was not communicated to the house itself.

**3. Arson—Evidence Insufficient.**

See the opinion for evidence which the court holds insufficient to support a conviction under an indictment for arson.

APPEAL from the District Court of Clay. Tried below before Hon. GEORGE E. MILLER.

Appeal from a conviction for arson; penalty, five years imprisonment in the penitentiary.

The opinion states the case.

*Barrett & Barrett* and *Frank Ford,* for appellant.

*Mann Trice,* Assistant Attorney-General, for the State.

HENDERSON, JUDGE.—Appellant was convicted of arson, and his punishment assessed at confinement in the penitentiary for a term of five years; hence this appeal.

The case was one of purely circumstantial evidence. The theory of the State was that the house in question was set on fire by an explosion of dynamite. Several witnesses testified to hearing the explosion, and two or three testified to seeing a fire, or something burning, at or about the house after the explosion. The testimony of only one witness, to wit, R. D. Welborne, the owner of the house, tended to show any burning of the house. We quote from his testimony as follows: "The force of the explosion tore a hole through the roof of the house. The splinters of the ceiling were scattered on the floor, together with small portions of the paper roofing (the roof being first covered with paper, and afterwards with tin). Some of this paper and splinters laying on the carpet were on fire. * * * The floor under the hole which had been blown in the house was almost covered with bits of the roofing and splinters, and some of these splinters had been blown down, together with pieces of the paper roofing, on the floor, and were lying on the carpet on the floor, and on fire; and I noticed some sparks dropping from the blown hole, and saw the fire between the paper roofing and the rafters. I smothered out the fire on the splinters and paper on the carpet, and finished putting it out with some water." We have quoted this much of the testimony because appellant claims the court committed an error in giving a certain charge in the case, and in refusing to give certain requested charges. The charge given by the court was as follows: "If you believe from the evidence that the explosion was, by design, caused on the roof of the house occupied and controlled by R. D. Welborne, and that a portion of the roofing of said house was composed of roofing paper, and that a portion of said roofing paper was by said explosion blown out of such roof, and that fire was thereby actually communicated to the house, such burning would constitute a 'burning,' as that term is defined in the main charge." Appellant excepted to this charge, and asked the following: "The explosion of a house by means of an explosive matter does not come within the definition of 'arson,' unless it results in setting the house on fire." This charge was refused. The contention here is that, under the facts of this case, the jury might consider that, under the charge as given by the court, they would be authorized to find the defendant guilty, if they believed that certain portions of the house had been detached therefrom by the explosion and were afterwards found to be on fire, and that it was not at all necessary that the fire be communicated to the house itself. While it is true that the charge of the court, in a general way, instructed the jury that they must believe that by means of the explosion the fire was actually communicated to the house, yet we are not satisfied but that, under the peculiar circumstances of this case, the jury might consider, unless their attention was directed to the very question, that the burning of parts of the house blown off and detached therefrom might be arson. The charge requested directly in-

structed the jury that such a burning would not be arson, but the fire must be communicated to the house, or that portion thereof remaining. We think the requested charge should have been given. It is true, article 761, Penal Code, provides that "the explosion of a house by means of gunpowder,· or other explosive matter, comes within the meaning of arson." The indictment, however, was not drawn under this article; and the court did not appear to so conceive it, but gave a charge in accordance with the indictment. As stated, however, under the peculiar facts of this case, the requested charge should have been given. Mulligan v. State, 25 Texas Crim. App., 199; Woolsey v. State, 30 Texas Crim. App., 346; 1 McClain Crim. Law, sec. 523.

Appellant also contends that the evidence is not sufficient to sustain the verdict. This is a case of purely circumstantial evidence. The testimony on the part of the State tended to show that appellant bought the dynamite, including cap and fuse, with which the house was exploded, in Fort Worth, about 100 miles distant by rail from Henrietta, on the 3d of June, 1898. The explosion of the house occurred about an hour after midnight on the 8th of June following. Appellant returned from Fort Worth to Henrietta on the evening of the 4th of June. One witness testified to seeing him have a small bundle in his hand at the time of his return. This is denied by appellant, and he introduced other evidence to that effect. The motive relied on by the State was that Meayers was a friend of appellant, and that he was rooming with him at the time; that said Meayers was at enmity with R. D. Welborne, the owner of the house, by reason of Welborne prosecuting said Meayers on account of violating the local option law. It was further shown that appellant roomed with Meayers at Mrs. McDonald's boarding house, about 250 feet from the Welborne building. On the night of the alleged offense, Meayers and defendant came from the place of business of said Meayers to their sleeping apartment at the McDonald boarding house, which was upstairs, and across the hall, opposite the room occupied by Mrs. McDonald. They both came up together about 12 o'clock that night. Mrs. McDonald testified that she heard one of said parties go downstairs that night shortly after she heard the two come up, and before the explosion occurred. The evidence also showed that Meayers did go down shortly after they returned to their room, and went to another part of the town, and slept at Taylor's that night. The evidence in this connection also shows that defendant was the only person that slept in that room that night. The State, to make out its case, introduced evidence of tracks leading from Mrs. McDonald's boarding house to the Welborne building, and returning. The ground was moist from a recent rain. These tracks were plain and easily traced. They showed that the party was going at a faster gait on his return than in going, and that some outgoing tracks were displaced or marred by the returning tracks. In connection with these tracks, the State's witnesses showed that the next morning they saw appellant, and he had on a pair of nar-

39th Crim. Rep.—43

row, pointed shoes, which they called "toothpick shoes," and they were old, and the soles broken and worn. The State's witnesses further testified that the tracks made by the party going and returning from the McDonald to the Welborne building the night before could not have been made with the toothpick shoes worn by appellant the next morning, but could have been made by the shoes which Meayers was wearing the next morning. This was the shape of the testimony concerning the tracks and shoes as left by the State. The defendant, however, showed (and this was not contradicted by any testimony for the State) that Meayers had but two pairs of shoes, and these were alike,—both broad toed; that he wore one of these pairs from the McDonald boarding house to Taylor's, where he stayed all night, and the other pair was locked up in his saloon, and that appellant did not have access thereto. This was substantially all of the inculpatory evidence against appellant. The rule with regard to circumstantial evidence is "that it must be such as to exclude to a moral certainty every hypothesis but that of the guilt of the accused of the offense imputed to him. This apprehends that every reasonable hypothesis besides that which coincides with the guilt of the accused must be sought for, and individually compared with all the facts proved, and rejected or excluded as incompatible with them, before the hypothesis of guilt is to be adopted. The result of this is that, if any of the facts or circumstances established in evidence be absolutely inconsistent with the hypothesis of the guilt of the accused, the hypothesis of his guilt can not be true." Applying this test to the case in hand, it is evident that the tracks proved were an essential element of the State's case, and were relied upon by it as a material link to connect defendant with the offense charged. It will be noted that there was no peculiarity about the tracks proved, except that they were made by a broad-toed shoe of a certain size. If the State had shown that appellant owned such a pair of shoes, or had access to such a pair of shoes (that is, shoes which would have made the tracks found), then the tracks proved would have been consistent with his guilt. But, when the uncontroverted proof established that the tracks were made by a character of shoe not shown to have been owned or worn by him, there was lacking in the proof an important and essential link in the chain of circumstances necessary to bind him to the offense. This is not like a case where the proof may consist of a number of strands, which form a cable, where one may be broken, and still enough of the strands remain to connect defendant with the offense; but here the proof consists of a single chain, in which an essential link is missing, or rather there is an inconsistency or incongruity in the proof regarding this link, which in effect negatives the prisoner's guilt. It is not only not consistent with the appellant's guilt, but inconsistent therewith. Indeed, it points with more force to the guilt of Meayers than defendant. He was absent from the house that night, at a time when, so far as the record shows, he might have committed the offense, and he wore shoes which might have made the tracks. While the tracks are

traced to and from the exploded building to the McDonald house, Meay-ers' tracks were never traced from the McDonald house to Taylor's. The only proof that we find in this case that tends to connect appellant with the offense is as an accomplice, but he is not indicted as such. We hold that the proof in this case is not sufficient to sustain the conviction under this indictment. Com. v. Phillips (Ky), 14 S. W. Rep., 378.

It is not necessary to notice appellant's assignment of error with reference to the misconduct of the jury, as it will not occur on another trial. We would observe, however, that it is not every view of the locus in quo of the offense by a jury which would authorize a reversal of a case. The judgment is reversed and the cause remanded.

*Reversed and remanded.*

HURT, Presiding Judge, absent.