## J. A. D. Johnson v. The State.

No. 7181.   Decided January 31, 1923.

Rehearing Granted December 19, 1923.

1.—Blowing up Building—Dipping Vat—Explosive—Indictment.

Where the prosecution was carried on under Article 1214, P. C., which makes the wilful burning of a building which is not enclosed with a wall or not covered an offense which may be punished by confinement in the penitentiary, and the indictment alleged that said building was a dipping vat, and the building not enclosed with walls and covered, held, that the judgment of conviction must be reversed and the cause remanded. Lattimore, Judge, dissenting.

2.—Same—Evidence—Confession.

Where, upon trial of blowing up a certain building, towit, a dipping vat, defendant made a confession that on the same night the dipping vat in question was blown up he blew up other dipping vats, the same was admissible as showing system, identity and intent, same being properly limited by the charge of the court.

3.—Same—Grand Jury—Bailiff—Indictment.

The practice of having persons other than the grand jury and the State's attorney present in the grand jury room while witnesses are being questioned is not to be encouraged, but if such presence extend no further than during the questioning of a witness, and it is shown that no consultation or deliberation of the grand jury was had in the presence of said outsider, as bailiff in the instant case, no error appears.

4.—Same—Charge of Court—Words and Phrases—Wilful—Article 743, C. C. P.

The omission of the word wilful in the court's charge, not being reasonably calculated to injure the rights of the defendant or affect the fairness of his trial the same does not constitute reversible error under Article 743, C. C. P.

5.—Same—Rehearing—Statutes Construed—New Offense.

Artice 1205, P. C., which provides that the explosion of a house by means of gun powder or other explosive matter comes within the meaning of arson creates a new offense, calls it arson, and punishes it as such, which otherwise would not have been arson under the law, unless fire was communicated to the house by means of the explosion; but Article 1214, P. C., which denounces the wilful burning of a building, etc., does not denounce as a crime the explosion of such property. Lattimore, Judge, dissenting.

6.—Same—Statutes Construed—Arson—Wilful Burning.

The proposition that Article 1213, P. C., making the rules and definitions as to arson apply to other wilful burning brought into Chapter 2 the provisions of Article 1205, P. C., relative to the explosion of a house, and made the explosion of any property included in the provisions of Chapter 2 a wilful burning whether fire was communicated to the property or not is not sound. Lattimore, Judge, dissenting.

### 7.—Same—Statutes Construed—Wilful Burning—Rule Stated.

The rules and definitions referred to in Article 1213 P. C. as applicable to other wilful burning relate to the communication of fire to the property as making the other wilful burnings complete, whether the property be destroyed or not, etc., but it cannot be held that the explosion of such property which does not communicate to it is a wilful burning. Lattimore, Judge dissenting.

### 8.—Same—Statutes Construed—Arson—Explosion—New Offense.

The crime denounced in Article 1205, P. C., is not truly arson, but the explosion of a house is made an offense whether it burn or not, and therefore creates a new offense, and a person cannot simply be charged with arson as under Article 1200, P. C., and if the explosion does not so communicate fire the prosecution must be based on Article 1205, P. C. Following Landers v. State, 39 Texas Crim. Rep., 671; Lattimore, Judge, dissenting.

### 9.—Same—Statutes Construed—Explosion—Rule Stated.

This court, therefore, concludes that the provisions of Article 1205, P. C., denouncing the explosion of a house as an offense cannot by the terms of Article 1213 be regarded as "Such rule or definition" as may be brought forward as applicable in aid of the other provisions of Chapter 2, of Title 17, but in fact creates a distinct offense applicable to houses only, and is therefore not available in the present prosecution. Lattimore, Judge, dissenting.

### 10.—Same—Dipping Vat—Statutes Construed.

This court holds that one who destroys a dipping vat is not punishable under Article 1214, P. C., but may be proceeded against under Article 1235, P. C., which provides that if any person shall wilfully or mischievously destroy any real or personal property, etc., he shall be punished by fine, etc. Lattimore, Judge, dissenting.

### 11.—Same—Dipping Vat Building—Statutes Construed.

It is the opinion of the writer that the dipping vat designated in the indictment and described in the evidence in the present case is not a building within the meaning of Article 1214, P. C. Morrow, Presiding Judge; Lattimore, Judge, dissenting; Hawkins, Judge, refrains from discussing this phase of the case as being immaterial in the decision of this case.

Appeal from the District Court of Cass. Tried below before the Honorable Hugh Carney.

Appeal from a conviction of blowing up a building, towit, a dipping vat, by explosives, etc.; penalty, two years imprisonment in the penitentiary.

After formal matters, the indictment charged that J. A. D. Johnson, on or about the 15th day of March, 1922, and anterior to the presentment of this indictment, in the county of Cass and State of Texas, did then and there unlawfully, wilfully, blow up, explode and destroy by means of gun powder, and by means of dynamite and by means of some explosive matter, to the grand jury unknown, a building there situate, the same not being enclosed with walls and covered, towit, a dipping vat, the said building being then and there the property of Cass County, Texas, and of Jeff Tollison, against the peace and dignity of the State.

*H. A. O'Neal* and *O'Neal & Harvey,* for appellant. On question of insufficiency of indictment, LaCrosse Ry. Company v. Vanderpool, 11 Wis., 119; Truesdell v. Gay, 13 Gray, 311; State v. Livermore, 44 N. H., 311; Cowdrick v. Morris, 9 Pa. Co., 312.

*W. A. Keeling,* Attorney General and *C. L. Stone,* Assistant Attorney General, for the State. On question of grand jury, Porter v. State, 160 S. W. Rep., 1194; Simms v. State, 45 id., 703; Moody v. State, 121 id., 1117.

On question of construction of statute, Landers v. State, 39 Texas Crim. Rep., 672.

LATTIMORE, Judge.—The original opinion was rendered on a misapprehension and is withdrawn. Appellant was convicted in the District Court of Cass County of the offense of blowing up a building by means of gunpowder or other explosive, and his punishment fixed at two years in the penitentiary.

It is alleged in this indictment that said building was a dipping vat, same being a building not enclosed with walls and covered. Article 1214 of our Penal Code makes the wilful burning of a building which is not enclosed with walls or not covered, an offense which may be punished by confinement in the penitentiary. Appellant moved to quash said indictment because it charged no offense against the laws.

Arson is defined by Article 1200 of our Penal Code, as the wilful burning of a house. The explosion of a house by the use of gunpowder, etc., is made arson by the terms of Article 1205, P. C., Chapter 1 of Title 17 of said Code deals with arson. Chapter 2 of said title deals with "other wilful burnings," and the first article of this latter chapter, Article 1213 P. C., is as follows: "The rules and definitions contained in the preceding chapter with respect to arson apply also to wilful burnings under the provisions of this chapter, where they are not clearly inapplicable."

Article 1214 next succeeding, is in part as follows: "Burning other buildings, hay, lumber, etc.—If any person shall wilfully burn any building not coming within the description of a house as defined in the preceding chapter, . . . he shall be punished by confinement in the penitentiary not less than two nor more than five years, or by fine not exceeding two thousand dollars."

Two questions here arise: Is the explosion of a building which lacks either walls or a roof, made punishable by Article 1214, supra, and, second,—is a dipping vat a building within the comprehension of said article? The first inquiry addresses itself to the indictment; the second, to the proof. Article 1205 of Chapter 1 of said title is as follows: "The explosion of a house by means of gunpowder, or other explosive matter, comes within the meaning of arson."

This lays down a rule applicable to certain cases of explosion and states that if the subject of such explosion be a house, i. e., a walled and roofed building or structure, the offense is arson. What if the exploded building have walls and no roof,—or vice versa? The answer seems plain by reference to Article 1213, supra, which in terms makes the rules and definitions laid down in Chapter 1 with reference to arson, apply to other wilful burnings,—as defined and punished under Chapter 2, unless "clearly inapplicable." The wilful burning of a building with walls *and* roof, is arson under Chapter. The wilful burning of a building which lacks *either* walls *or* roof, is "other wilful burning" under Chapter 2. One of said offenses is given a graver punishment than the other, but otherwise the only difference lies in the character of the building; therefore if it have walls and a roof, its explosion is arson, but if it lacks either walls or roof, its explosion would be "Other wilful burning." There seems to us no escape from this plain construction of Article 1213, supra, and so concluding we hold that the indictment charged an offense under Chapter 2 of said Title.

It was not necessary to allege that as a result of the explosion fire was communicated to the building. The law fixes the character of the offense committed when the allegation be that the house or other building be blown up by the use of gunpowder or other explosive, and this is true whether fire is communicated to the building or not. Landers v. State, 39 Texas Crim. Rep., 672. The fact that the building be denominated a dipping vat in the indictment, would not present ground for quashing same, it being clear that no house or building could have its character fixed by a name; nor would the fact that there is no such offense eo nomine as burning or blowing up a dipping vat, justify the quashing of said indictment.

The trial court told the jury in his charge that a dipping vat was a building within our statutes against wilful burning, but that same was not a house, and the exceptions to this charge together with the complaint of the insufficiency of the testimony, present for our consideration the second question above referred to.

The proof showed the dipping vat in question to have been built of cement furnished by the county, the work of erection being donated by citizens of the community in which same was located, and the vat being built on land belonging to a Mr. Tollison. Said vat was described in the testimony as being three or four feet wide, six or seven feet deep, and about twenty-seven feet long, the walls and floor being of concrete and sunk in the ground, the upper edge of the walls being near the surface of the soil, the exit end sloping to enable cattle to get out after being dipped. The structure had walls but no roof. Was it a building as contemplated by Article 1214, supra? In Vol. 6 of Cyc, pp. 115-116, appear many definitions of a building, among which we find: "A structure, an edifice, . . . designed for use in the

position in which it is fixed, . .. . a fabric constructed, a thing built, a structure or edifice enclosing space within its walls." Many other definitions will be found in Words & Phrases together with citation to many authorities. The material of which such structure is built is immaterial. That it is a structure less than a house, is evident. That it has walls but no roof, is beyond question. To be a building, or even a house, it need not be above ground, for a basement, a dugout having a dirt floor and roof, a cellar located underground,—have all been held to be houses within the statutes making entry of a house, burglary. The structure of the vat in question is such that it has walls and a floor of cement; space is enclosed by the walls; a wider space and a roof and same could be a house fit for human habitation. In our opinion said structure was beyond doubt a building within the meaning of that term in Article 1214, supra, and one whose explosion would be punishable thereunder. There was no controversy as to the structure of the vat, and the assumption of uncontroverted facts in the charge was not erroneous. If there had been conflicting testimony regarding the fact that said structure had walls and enclosed space and only lacked a roof, such assumption of fact might be erroneous.

There is complaint at the charge for telling the jury that if they believed said vat was then and there on premises in the possession of Jeff Tollison, occupied by Jeff Tollison, etc., they should find appellant guilty. No issue affecting the unlawful quality of the act of appellant, turned upon or was in any way affected by said charge. The land upon which said vat was located belonged to Tollison, and he had made no deed to Cass county therefor. Ordinarily in the absence of some written agreement to the contrary, any construction entering the soil becomes a part of the realty. The charge was not erroneous for its failure to submit to the jury the question of ownership in Cass county, or in Cass county and Tollison. Ownership of a burned building may be proved by oral testimony. Wylie v. State, 34 Texas Crim. Rep., 515; Hester v. State, 51 S. W. Rep., 932; Anderson v. State, 71 Texas Crim. Rep., 27, 159 S. W. Rep., 847. The ownership not having been alleged in appellant, the allegation thereof becomes of materiality only for the purpose of identifying the property destroyed, and the courts will not submit issues involving title, unless the testimony makes it reasonably apparent that the allegation in this regard was misleading and one from which the accused was not put upon notice of the particular offense charged. Wylie v. State, supra.

Part of the descriptive averment in the indictment of the vat was, that it was "a building . . . not enclosed by walls and covered." Upon his construction of the testimony and asserting a variance between the proof and such allegation, an instructed verdict was asked by appellant and also special charges upon this issue. Ap-

pellant is in error. "A building . . . enclosed by walls and covered,"—must have both walls and a cover, and is a house under the law of arson. "A building . . . not enclosed by walls and covered" is a building which lacks either walls or a roof, and is, therefore, not a house, but is such building as is contemplated by article 1214, supra.

The confession of appellant that on the same night the vat in question was blown up, he blew up other dipping vats, was admissible as showing system, identity and intent, and the admission of such testimony was proper and was correctly restricted in the charge of the court. The refusal of a special charge restricting such testimony to the question only of intent presents no error.

Mr. Hardesty, who was bailiff for the grand jury, was permitted to be in the grand jury room and aid in the examination of certain witnesses. He was not consulted by any member of the grand jury with regard to the presentation of the bill of indictment, nor was he present during any discussion or deliberation of the grand jury with regard to finding same. A motion to quash the indictment based on the presence of Mr. Hardesty in the grand jury room as above stated, was properly overruled. We do not think the practice of having persons other than the grand jury and the State's attorney present in the grand jury room while witnesses are being questioned, is to be encouraged, but if such presence extend no further than during the questioning of a witness, and it is shown that no consultation or deliberation of the grand jury was had in the presence of said outsider, no error appears. Mr. Branch cites in Sec. 484 of his Annotated P. C. many authorities upon this proposition.

Complaint is made of the omission to instruct in the charge as to the meaning of the word "wilful". If from the case made by the proof there was any possible defensive issue referable to lack of wilfulness in the blowing up of the dipping vat in question, such omission might be serious, but we are forbidden by Article 743 of our Code of Criminal Procedure to reverse causes for errors in the charge unless same appear reasonably calculated to injure the rights of the accused or affect the fairness of his trial. The blowing up of this dipping vat resulted from no accident or mistake, and the record suggests no reason for same except that of objecting to its presence and use as a means of enforcing the law requiring the dipping of cattle in an effort to exterminate fever carrying ticks.

We have not discussed seriatim the special charges refused, nor all the bills of exception, but our opinion disposes of the contentions raised regarding each and all of them.

Finding no error in the record, the judgment will be affirmed.

*Affirmed.*

## ON REHEARING.

## December 19, 1923.

HAWKINS, JUDGE.—More mature consideration upon motion for rehearing has led us to believe we were in error in our former affirmance of the judgment.

The law relative to arson is found in Chapter 1, Title 17, P. C. After defining "arson" as the "wilful burning of any house, etc." (Article 1200 P. C.) the next article defines a house; then in order that it might be plain what character and extent of burning would make the offense of arson complete Article 1202 provides that the "burning is complete when the fire has actually communicated to a house, though it may be neither destroyed nor seriously injured." Articles 1203 and 1204 deal with the design and intent of the party accused; then appears Article 1205 which is invoked in aid of the present prosecution; it reads: "The explosion of a house by means of gunpowder, or other explosive matter, comes within the meaning of arson." The effect of this article was to create a new offense, call it arson and punish it as such which otherwise would not have been arson under the law, unless fire was communicated to the house by means of the explosion. This court recognized such to be the case in Landers v. State, 39 Tex. Crim. Rep., 671, 47 S. W. Rep., 1008, which held that unless fire was communicated to the house by the explosion the prosecution should not have been under the arson statute (Art. 1200 P. C.) but under the explosion statute (Art. 1205 P. C.). When we go to the next chapter (2 of Title 17) the first article therein (1213) reads: "The rules and definitions contained in the preceding chapter with respect to arson apply also to wilful burnings under the provisions of this chapter where they are not clearly inapplicable." The next article (1214) denounces the wilful burning of a building, which is not a house, stack of corn, hay, fodder, grain, flour, boards, fences, etc. Nowhere in chapter 2 does it denounce as a crime the explosion of such property. Our original opinion was based on the proposition that Article 1213 (supra) making the rules and definitions as to arson apply to other wilful burnings, brought into chapter 2 the provisions of article 1205 relative to the explosion of a house, and made the explosion of any property included in the provisions of chapter 2 a wilful burning whether fire was communicated to the property or not. We have concluded this proposition is not sound. The "rules and definitions" referred to in Article 1213 as applicable to other wilful burnings relate to the communication of fire to the property as making the other "wilful burning" complete, whether the property be destroyed or not, and as to the design and intent of the accused, etc. If the explosion of a stack of hay, or of any other property described in said chapter 2 communicated fire to it the offense of "wilful burning" would be complete

whether it was totally destroyed or only slightly injured, by reason of the rules and definitions as to arson being applicable. But to hold that the explosion of such property which does not communicate fire to it is a "wilful burning" seems carrying the doctrine of intendment dangerously far. Again reverting to Article 1205; the crime there denounced is not truly arson, but the *explosion* of a house is made an offense whether is burn or not; the statute says it comes within the meaning of arson when applied to a house and makes it punishable as such. If article 1205 did not create a new offense then one who explodes a house could be charged simply with *arson* under Article 1200, and upon proof of the explosion be convicted of arson whether or not fire was communicated to the house as a result of the explosion. But as we understand the opinion in Landers v. State, (supra) this is exactly what may not be done. If the explosion sets fire to the house surely the prosecution could proceed under the arson statute    (Art. 1200), but if the explosion does not so communicate fire to the house the prosecution must be based on and proceed under Article 1205. In the arson and explosion statutes some similarity may be found to our statutes defining burglary (Art. 1303 P. C.) and burglary of a private residence, (Art. 1305 P. C.) which latter are held to be distinct offenses, necessitating different allegations to charge the offenses. Osborne v. State, 42 Texas Crim. App., 557, 61 S. W. Rep., 491; Malley v. State, 58 Texas Crim. Rep., 425, 126 S. W. Rep., 598. The Legislature could have denounced as a crime the explosion of any property included in chapter 2 of title 17 and called it a "wilful burning" even though in fact the property was not burned, nor even scorched by the explosion, just as the explosion of a house was made a crime and called arson. It is not the name given to the crime defined that controls so much as the elements of the crime itself. The law making body may still make such law and may include dipping vats among hay, fodder, corn, etc., by amending Article 1214, or it may make the explosion of a dipping vat a felony independent of any present statute. We have concluded that the provisions of Article 1205 denouncing the explosion of a house as an offense cannot by the terms of Article 1213 be regarded as such "rule" or "definition" as may be brought forward as applicable in aid of the other provisions of Chapter 2, of Title 17, but that said Article 1205, however it be classed or named, does in fact create a distinct offense applicable to houses only, and is therefore not available in the present prosecution.

My brother Morrow is of opinion that a dipping vat constructed as was the one described in the present case is not a "building" under Article 1214. He may express his views relative to that matter. The present writer has refrained from discussing it deeming it unnecessary in disposing of the case. If Article 1205 cannot be brought forward in aid of Article 1214 it is immaterial whether or not the dipping vat was a "building."

We believe one who destroys a dipping vat is not punishable under Article 1214, but may be proceeded against under Article 1235 of the P. C. which reads thus:

"If any person shall wilfully and mischievously injure or destroy any growing fruit, corn, grain, or other like agricultural products, or if any person shall wilfully or mischievously injure or destroy any real or personal property of any description whatever, in such manner as that the injury does not come within the description of any of the offenses against property otherwise provided for by this Code, he shall be punished by fine not exceeding one thousand dollars; provided, that when the value of the property injured is fifty dollars or less, then in that event, he shall be punished by fine not exceeding two hundred dollars."

The motion for rehearing is granted, the affirmance set aside, the judgment of the trial court reversed, and the cause remanded.

*Reversed and remanded.*

MORROW, PRESIDING JUDGE, (concurring).—Concurring in the opinion of Judge Hawkins ordering a new hearing and a reversal of the judgment, the following observations are made upon another phase of the case. In the indictment, the structure which was the subject of the arson is denominated a dipping vat and is therein not otherwise described, save that it is called a building. The statute upon which the prosecution is founded reads thus:

"If any person shall wilfully burn any building, not coming within the description of a house, as defined in the preceding chapter, or shall wilfully burn any stack of corn, hay, fodder, grain or flax, or any pile of boards, lumber or wood, or any fence or other inclosure, the property of another, he shall be punished by confinement in the penitentiary not less than two nor more than five years, or by fine not exceeding two thousand dollars." (Art. 1214, Penal Code.)

In the evidence the vat is thus described:

"This vat is made of concrete, and the body of it is about twelve feet long, with twelve or fifteen foot slope, I mean it slopes up to the surface from the dipping pen, for the cattle to walk out on; the slope is at one end, and the walls come up; the entire length of the vat from end to end is about twenty-six feet, and they slope a little from the bottom to the top, it is not quite as wide at the bottom as it is at the top, and it is about six and a half or seven feet deep. This entire vat, from end to end is built of concrete, and the sides of the vat are made of concrete, and the bottom is also made of concrete; the whole thing is concrete, and it is all connected, the sides, end and bottom; it is all together and the walls are up slightly above the surface to keep the water from running from it. That vat is for the purpose of holding the arsenical dip for the purpose of dipping the cattle; we dip the cattle in it. * * * These vats are built to hold this fluid, or dip. There are no openings to the vat except at the top."

The offense of arson is defined in Chap. 1, Title 17 of the Penal Code as "the wilful burning of any house." A house is defined as "any building, edifice, or structure inclosed with walls and covered." Chap. 2 of the same title denounces "other wilful burning" and contains Article 1214, supra. That the term "building" as embraced in the statute does not include all structures other than a house seems clear from other sections in the chapter which denounce the burning of a ship, boat, vessel, or bridge. See Articles 1215-1217. The meaning of the term "building" has been the subject of judicial inquiry and declaration on many occasions.

"In a statute, the word 'building' will most always depend for its meaning in some degree of the particular subject and its connection with other words." (Corpus Juris, Vol. 9, p. 685, note 94; also page 683, note 7.)

Illustrations too numerous to include in this opinion will be found in the notes mentioned. From one of the notes we make the following quotation as embracing what the writer conceives to define the term "building" as it is found in the statute under consideration:

"The words 'build' and 'building' as a verb and participle, are commonly used as applicable to the erection of numerous structures. *   *   * Thus, we speak of building bridges, building fences, sidewalks, embankments, etc. But notwithstanding this, we think the word building, as a noun, has a common, well understood meaning, exclusive of structures of this character, and including only those which have a capacity to contain, and are designed for the habitation of man or animals, or the sheltering of property."

In Article 10, P. C., it is said, in substance, that words not specially defined are to be taken and construed in the sense in which they are understood in common language, taking into consideration the context and subject-matter relative to which they are employed. Construed in the light of this provision of the statute, the Act of the Legislature pertaining to the dipping of cattle and designating the receptacle which is to contain the fluid for dipping as a *"vat"* does not suggest that the vat and a building are synonymous. A *vat* as understod in common language and as defined in the dictionary is "a large vessel or tub for holding liquids." The word "building" is thus defined:

"2. That which is built; (a) As now generally used, a fabric or edifice, framed or constructed, designed to stand more or less permanently, and covering a space of land, for use as a dwelling, storehouse, factory, shelter for beasts, or some other useful purpose. 'Building' in this sense does not include a mere wall, fence, monument, boarding, or similar structure, though designed for permanent use where it stands; nor a steamboat, ship, or other vessel of navigation."

See Webster's New International Dictionary, pages 288 and 2268.

It is the opinion of the writer that the *vat* designated in the indictment and in the statute (Acts of Thirty-sixth Legislature, Chap. 44;

96 T. C.—15

Acts of Thirty-eighth Legislature, Chap. 141) and described in the evidence in the present case is not a building within the meaning of Article 1214, supra, and that the offense of *destroying a dipping vat* is not punishable under that article but under Article 1235 of the Penal Code, which reads thus:

"If any person shall wilfully and mischievously injure or destroy
* * * real or personal property of any description whatever, in such manner as that the injury does not come within the description of any of the offenses against property otherwise provided for by this Code, he shall be punished by fine not exceeding one thousand dollars."

LATTIMORE, Judge (dissenting).—My brethren have concluded that the explosion of a building other than a house is not a wilful burning as defined in Chapter 2, Title 17, of our Penal Code, and that there being no statute which in terms makes the explosion of a dipping vat an offense, this case must be reversed and remanded. My respect for them has induced an earnest but unsuccessful effort to agree with their conclusion.

That a dipping vat such as described in the testimony herein is a building within the contemplation of our statute against unlawful burnings seems to me too clear for serious dispute. Its description is set out in our original opinion. It is averred in the indictment to be "A building there situate, the same not being enclosed with walls and covered, towit: a dipping vat." The insertion of the name "dipping vat" detracts nothing from the force of the allegation that the structure is a building and but makes necessary proof of the fact that said building was in fact known and designated as a dipping vat. Calling it a dipping vat would not affect the character of the building. It might be a house with walls and roof,—or a building without roof, and yet be a dipping vat. In addition to what was said in our original opinion I further state that in Webster's International Dictionary, p. 288, a building is defined as "that which is built; (a) As now generally used, a fabric or edifice, framed or constructed, designed to stand more or less permanently, and covering a space of land, for use as a dwelling, storehouse, factory, shelter for beats, or *some other useful purpose.*" Also from a note in Corpus Juris, vol. 9, page 685,—quoting from a Wisconsin case, I take the following: "We think the word building, as a noun, has a common, well understood meaning, exclusive of structures of this character, and including only those which have a capacity to contain, and are designed for the habitation of man or animals, or the sheltering of property." Mr. Bouvier in his legal dictionary defines a building as "An edifice, erected by art, and fixed upon or over the soil, composed of brick, marble, wood or other proper substance, connected together, and designed for use in the position in which it is so fixed." Many

descriptions of buildings appear on page 686, Vol. 9, Corpus Juris, wherein the structures appear to lack many of the elements of a building which the dipping vat in question possesses. That a cement structure such as is herein described would shelter property,—serve a useful purpose,—is an edifice covering land, permanently put together, etc., is beyond contradiction. It seems to me that a stone or wooden silo, cistern or oil tank is necessarily a building within the meaning of our arson statute and the statutes against unlawful burnings, and if same had a roof it would be a house within the meaning of Art. 1201, P. C.

I pass to the other question of difference between by Brethren and myself, viz: Is the explosion of the various properties named in Arts. 1214, 1215 and 1217 of Chapter 2, Title 17, punishable under those statutes? All the provisions of said chapters one and two, Title 17 from Arts. 1200 to 1216 inclusive seem to have been written at the same time, but Art. 1217 relating to the burning of bridges was amended in 1858. Art. 1203 so written is as follows:

"It is of no consequence by what means the fire is communicated to a house, if the burning is with design. It may be by setting fire to any combustible material communicating therewith, by an explosion, or by any other means."

Later comes Art. 1205 which is as follows:

"The explosion of a house by means of gunpowder, or other explosive matter, comes within the meaning of arson."

Art. 1206 is as follows:

"A house, blown up or otherwise destroyed for the purpose of saving another house from fire, is not within the meaning of arson."

Analyzing the language of Art. 1205 we see it does not say that the explosion of a house . . . shall be *called arson*, nor that such explosion *should be punished as arson*, but it does say that the explosion of a house . . . *comes within the meaning of arson*. I further observe that Art. 1200 defines arson as the wilful burning of any house, and that Art. 1205 says in express terms that arson means also the explosion of a house. Hence one is the legal equivalent of the other and a definition of arson is the explosion of a house. Arts. 1200, 1205 and 1206 are the only articles in Chapter 1, the arson shapter, which contain definitions. The other articles of said chapter contain rules. Passing to Art. 1213, the opening article of Chapter 2 of said Title, we note that it says in plain words that the "rules and definitions" contained in the preceding chapter (the arson chapter) shall apply to wilful burnings under the provisions of said Chapter 2 unless clearly inapplicable. None of the rules or definitions contained in Chaper 1 are repeated in words in Chapter 2 of said Title, the reason for this being that Art. 1213 carries forward each rule and definition in Chaper 1 into Chapter 2 and there utilizes and makes applicable said rules and definitions unless clearly

inapplicable. It is as though it said: "Whatever is arson by definition, or whatever rule applies in arson prosecutions under Chapter 1 applies in Chapter 2, unless clearly inapplicable. Why use the words "and definitions" in Art. 1213 if my Brethren be correct? If they be right there would then be no definitions to carry forward and apply. Noting Arts. 1205-6, we observe that they express one the affirmative and the other the partial negative of the same definition, and unless the writers of the law intended them to have application to Chapter 2, they wasted words in writing Art. 1213 in so far as they directed the bringing forward of the definitions of Chapter 1 and applying them to Chaper 2. Have the definitions of Arts. 1205-6 application to those things set out in Chapter 2? I assert that they have. Not only are they not clearly inapplicable, but on the contrary it appears to me that they are clearly applicable. Can a building other than a house, a stack of corn, hay, fodder, a pile of boards, lumber or wood, a ship or other vessel, a boat or a bridge, be exploded and thus destroyed by dynamite or gunpowder? Beyond question. Being a little lower in the scale of creation and use, not being primarily for the occupance of human beings, we can understand how their destruction by fire or explosion would be deemed less penal than similar destruction of a house, but if their destruction by fire be made penal in a chapter following one in which the destruction of a house by explosion is made to mean the same thing as its destruction by fire,—and in which this is the only affirmative definition, and there be the plain command to make all definitions in said former chapter apply to the latter,—I feel myself impelled to give effect to what seems the natural and logical construction of the words and terms used. If blowing up a house is arson and gravely penal,— a house being a building with walls and roof,—reason would seem to dictate that the blowing up of a building not a house because lacking either walls or roof, would be an offense with the same elements and constituents but perhaps less in punishment. My conclusion is in accord with this reason. If the blowing up of a house be a crime,— a house being a structure with walls and roof,—logic would argue irresistibly that it would be a crime to blow up a ship, a bridge or a building which only lacked either walls or roof. My position upholds this conclusion of logic.

I can not follow by Brethren when they say in reference to Art. 1205, supra:

"The effect of this article was to create a new offense, call it arson and punish it as such which otherwise would not have been arson under the law, unless fire was communicated to the house by means of the explosion. This court recognized such to be the case in Landers v. State, 39 Texas Crim. Rep., 671, 47 S. W. Rep. 1008, which held that unless fire was communicated to the house by the explosion the prosecution should not have been under the arson statute (Art. 1200 P. C.), but under the explosion statute (Art. 1205 P. C.).

This seems predicated on the idea that after the law of arson was written some other Legislature engrafted a foreign proposition into the law and "called it arson" and "punished it as arson," when it was not in fact a part of the law of arson. I have already called attention to the fact that all this arson chapter and most of Chapter 2 were written at the same time. I do not care to attempt to show the scientific kinship between the principles of explosions and fires as a reason for the two definitions of arson above discussed, but content myself with repeating the statement that both definitions were written by the Legislature at the same time in Chapter 1, Title 17, and that the Act denominated arson in one definition applies equally with the others to the offenses mentioned in Chapter 2 of said title, and that we are commanded by legislative authority to apply them. Nor can I agree at all with the statement of my Brethren that the Landers case, 39 Texas Crim. Rep., 671, recognizes or in any way states that by Art. 1205, supra, the Legislature created a new offense, "called it arson" and "punished it as such," when under the law it was not arson unless fire was communicated to the house by means of the explosion. There is nothing in the Landers' case to call for such announcement. The indictment therein was for arson by setting fire to a house. Apparently the proof was of a fire caused by an explosion. The contention was made that the only fire proven was in certain parts of the roof detached from the house by the explosion, and we held error the refusal of a special charge calling attention to the fact that under the form of indictment in that case the explosion of the house would not be arson unless the fire was communicated to the house. The opinion states clearly that while under the statute the explosion of a house comes within the meaning of arson, the indictment was not drawn under the explosion article, and that the special charge mentioned was appropriate under the facts and the form of the indictment used. There is nothing in the opinion in said case which authorizes the conclusion that the explosion of a house is not as much arson within the original contemplation of the Legislature as its being burned by fire, or that one who explodes a house may not be prosecuted for arson. The contrary is true.

As I understand it the only distinction made or intended under Chapters 1 and 2 of Title 17 between arson and other unlawful burnings, is that one applies to a house, the other to buildings, etc., not houses. There is no difference made or intended in the rules and definitions as to the manner of the destruction of the property. So believing and that there was no error in the charge of the court for which reversal is made necessary, I most respectfully record my dissent for the reasons above stated.