THE ATTORNEY GENERAL
OF TEXAS
ATTORNEY GENERAL


November 5, 1970

Hon. J. R. Singleton
Executive Director
Texas Parks and Wildlife
  Department
John H. Reagan Building
Austin, Texas  78701

Dear Mr. Singleton:

Opinion No. M- 721

Re:  Various questions involving
     plans and specifications and
     other necessary costs in con-
     nection with the construction
     of a fish pass (and bridge)
     between Corpus Christi Bay
     and the Gulf of Mexico adjacent
     to Mustang Island.

        Your request for an opinion on the above subject matter
concerns the expenditure of Item 23 in the appropriation to the
Parks and Wildlife Department contained in the current General
Appropriation Act.  Your questions are as follows:

        "1.  Can the State Highway Department, through
contract with the Parks and Wildlife Department, pre-
pare plans and specifications for the Parks and
Wildlife Department for said bridge and approaches
on Park Road 53 of the State highway system?

        "2.  Can the State Highway Department, through
interagency contract with the Parks and Wildlife De-
partment, construct the bridge and approaches?

        "3.  Is there any authority, independent of
Article 4413(32), V.C.S., for the State Highway De-
partment itself, or through contract with an in-
dependent contractor, to build the bridge and ap-
proaches for the Parks and Wildlife Department?

        "4.  Can the Parks and Wildlife Department,
through the State Building Commission, under the pro-
visions of V.C.S. Article 678(f) (State Building Con-
struction Administration Act) construct said bridge
and approaches even though it is on the designated
State highway system?

        "5.  Can the Parks and Wildlife Department, by
meeting the requirements and plans and specifications

-3487-

of the State Highway Department, contract for the
construction of the bridge and approaches on the
State designated highway system, with an indepen-
dent contractor?

"6.   Can the State Building Commission, acting
for the Parks and Wildlife Department, enter into
an agreement with the State Highway Department for
the design and construction of the subject bridge and
approaches?"

Item 23 of the appropriation to the Parks and Wildlife
Department contained in House Bill 2, Acts 61st Leg. 1969, 2nd
C.S., reads as follows:

"For the Years Ending
August 31, 1970        August 31, 1971

"23.   For preparation of detailed plans and specifi-
cations, and all other necessary costs in connection
with first phase construction of a water exchange
pass (and bridge) between Corpus Christi Bay and the
Gulf of Mexico adjacent to Mustang Island according
to preliminary engineering plans.   .................

$1,500,000                    $1,500,000."

In construing the above quoted provisions we held in
Attorney General's Opinion M-574 (1970):

"You are therefore advised in answer to your
second and third questions that if the Parks and
Wildlife Department intends to maintain the 'water
exchange pass' as a fish pass, such funds may be
expended from the Special Game and Fish Fund No.
9;  . . ."

In connection with the construction of the above described
fish pass you state in your request that the fish pass would cut
through a part of the designated highway system on Mustang Island
and would therefore necessitate the construction of the bridge
referred to in the appropriation quoted above.

In Attorney General's Opinion Number R-1930, dated Dec-
ember 14, 1949, to H. D. Dodgen, Executive Secretary, Game, Fish
and Oyster Commission, it was held that moneys in the Special Game
and Fish Fund could be expended to build a bridge where the channel

for a fish pass would cross a designated State highway requiring the construction of a bridge to cover the channel.  The opinion stated:

"It is, therefore, our opinion under the facts submitted that the building of this bridge to replace the highway and to cover the channel to be dredged is a necessary incident to and part of the construction and maintenance of passes leading from one body of tide-water to another, and the cost of constructing such bridge may be paid out of money appropriated to the Game, Fish and Oyster Commission by the Legislature for the purpose of constructing and maintaining these passes.

"One further question remains and that involves the duty of maintenance once the bridge is constructed.  It is our opinion that once the bridge has been built by the Game, Fish and Oyster Commission and accepted by the State Highway Department as a part of the State system, the maintenance thereof is the duty of the State Highway Commission. Article 6674q-4, V.C.S."

Section 3 of Article 4413 (32), Vernon's Civil Statutes, The Interagency Cooperation Act, reads, in its relevant part:

". . . Provided, however, nothing herein shall authorize any agency to construct any highway, street, road, or other building or structure for any other agency, except as otherwise specifically authorized by existing law, . . ."

Article 6674q-4, Vernon's Civil Statutes, * provides:

"All further improvement of said State Highway System shall be made under the exclusive and direct control of the State Highway Department and with appropriations made by the Legislature out of the State Highway Fund.  Surveys, plans and specifications and estimates for all further construction and improvement of said system shall be made, prepared and paid for by the State Highway Department.  . . ."

*This Article is codified in Title 116, Roads, Bridges and Ferries in Chapter One entitled State Highways, and in Subdivision 1A entitled Construction and Maintenance.

In view of the foregoing, it is our opinion that the bridge in question may be constructed as a necessary incident to the construction of the fish pass in question and that such bridge will become a part of the highway system.  Since it is the duty of the Highway Department to construct and maintain highways, including bridges, it is our opinion that the provision contained in Section 3 of Article 4413(32), above quoted, is not applicable for the reason that such construction has been "otherwise authorized by existing law."

You are accordingly advised in answer to your first question that the State Highway Department, through a contract with the Parks and Wildlife Department, may prepare plans and specifications for the Parks and Wildlife Department for the bridge in question and approaches on Park Road 53 of the State highway system.

In answer to your second question, it is our opinion that the State Highway Department through an interagency contract with the Parks and Wildlife Department may construct the bridge and approaches, either by its own personnel or by a contract with an independent contractor.

In answer to your third question, you are advised that since the moneys contained in Item 23 are not Highway fund moneys and the appropriation was not made to the Highway Department, the Highway Department may not expend these funds independent of a contract with the Parks and Wildlife Department.

The fish pass and bridge referred to in your request is not a "building", nor is it an integral part of a building construction project.  In our opinion Article 678f, Vernon's Civil Statutes, is not applicable.  Section 2(c) of that statute provides that a building construction project includes "any building or any structure or any facility or utility appurtenant thereto." These terms are subject to a construction in harmony with the constitutional provision creating The State Building Commission and authorizing its powers.  Article III, Section 51-b(c), Constitution of Texas, authorizes the Legislature to fix the terms and conditions upon which the Commission "may acquire necessary and real and personal property, salvage and dispose of property unsuitable for State purposes, modernize, remodel, build and equip buildings for State purposes, and negotiate and make contracts necessary to carry out and effectuate the purposes herein mentioned." (Emphasis added.)  Thus, Article 678f, Section 2(c) may grant no broader powers to the Building Commission than those given in Article III, Section 51-b(c).  Furthermore, "any structure or

any facility or utility appurtenant thereto" are subject to the construction that they mean like things in the same nature of a "building". 53 Tex.Jur.2d 221, Statutes, Secs. 154, 155.

In interpreting the word "building" as used in the Constitution, we must not give it a technical construction. 8A Texas Digest 17, Key No. 13, Constitutional Law. Rather, we are required to interpret it as it would be understood by the average voter, unlearned in the law. The meaning to be ascribed to it is the natural, ordinary, common sense meaning. 8A Texas Digest 18-21, Key No. 14, Constitutional Law, Brady v. Brooks, 99 Tex. 378, 89 S.W. 1052 (1905); Collingsworth County v. Allred, 120 Tex. 473, 40 S.W.2d 13, 15 (1931); 16 C.J.S. 79 Const.Law, Sec. 17, n. 54-55.

Its ordinary meaning implies the idea of habitation for the permanent use of man, or an erection connected with his permanent use. Black's Law Dictionary, Fourth Edition, p. 244, under "Building" and cases cited. In statutes, the word "building" is held to depend for its meaning in some degree on its particular subject and its connection with other words. Johnson v. State, 96 Crim.Rep. 216, 257 S.W. 551 (1923). As commonly understood, it is a house for residence, business, or public use, or for the shelter of animals or storage of goods. Favro v. State, 39 Crim. Rep. 452, 46 S.W. 932 (1898).

In view of the foregoing, in answer to your fourth question, you are advised that the fish pass and bridge, or approaches thereto, do not constitute a building or like structure, and it is not an integral part of a building construction project. Consequently, the Parks and Wildlife Department may not construct the same through the State Building Commission.

In answer to your fifth question, you are advised that the Parks and Wildlife Department may contract for the construction of the bridge and approaches with an independent contractor.

In answer to your sixth question, we have concluded that the State Building Commission is not authorized to enter into a contract with the State Highway Department for the design and construction of the bridge and approaches.

S U M M A R Y

Moneys appropriated out of Item 23 to the Parks
and Wildlife Department contained in the current
General Appropriation Act may be expended by the

Parks and Wildlife Department for the construction of a bridge required to be constructed, since the fish pass will cut through Park Road 53, a part of the State highway system.  The Texas Highway Department through an interagency contract with the Parks and Wildlife Department may construct such bridge either by its own personnel or through a contract with an independent contractor.  Article 678f, Vernon's Civil Statutes, is not applicable to such contract and therefore the State Building Commission has no duties with reference to the construction of said bridge.

Very truly yours,

CRAWFORD C. MARTIN
Attorney General of Texas

Prepared by John Reeves
Assistant Attorney General

APPROVED:
OPINION COMMITTEE

Kerns Taylor, Chairman
W. E. Allen, Co-Chairman
J. C. Davis
Bob Lattimore
David Longoria
Richard Chote

MEADE F. GRIFFIN
Staff Legal Assistant

ALFRED WALKER
Executive Assistant

NOLA WHITE
First Assistant